AUDREY TAMIMI, Appellant, *v.* ADNAN TAMIMI, Respondent.

Second Department, January 24, 1972.

*Peter W. Quinn* for appellant.

No appearance for respondent.

SHAPIRO, J.   In this action for a separation, for support and maintenance of the plaintiff and the children of the marriage, and for a declaratory judgment that a divorce obtained by the defendant in Thailand is null and void, the Special Term, after trial, dismissed the plaintiff's complaint, *as a matter of law.*

A statement of the facts, which are undisputed since the defendant, although represented by counsel at the trial, did not testify, is necessary to an understanding and determination of the question of law involved.

### THE FACTS

The plaintiff wife, a citizen of Great Britain, and the defendant, an Iraqi national employed by the United Nations, were married in New York City in 1952.   They have two children.   In the course of his employment, the defendant took his family to Thailand in November of 1963.   They leased their New Rochelle home before leaving.

After a few weeks in Thailand, the children became ill and the parents were advised by a physician to take them out of that

climate. The defendant thereupon induced the plaintiff to take the children to visit her parents in England — she did that in May of 1964 — and he also told her he would join her some months later. In April of 1964, after the plaintiff had agreed to remove the children from Thailand, the husband instituted an action against her for divorce in the Bangkok Civil Court. The complaint alleged acts of misconduct by the plaintiff tantamount to cruel and inhuman behavior. The plaintiff was personally served with process in the Thailand action but she interposed no answer to the complaint.

Shortly thereafter, both her husband and his Thai attorney assured her that if she continued with the plan to take the children back to England and thereafter to America, the divorce action would be dropped. Despite that promise, and after she had left Thailand with the children, her husband proceeded with the action and obtained a decree of divorce by default on August 6, 1964, a copy of which was received by her through the mails. It is this decree which the plaintiff here seeks to have declared void.

### DETERMINATION OF THE SPECIAL TERM

In dismissing the plaintiff's complaint, Judge WALSH, at a Special Term, held that the Bangkok court had acquired jurisdiction over the person of the plaintiff and that the acts complained of had occurred within that court's jurisdiction. Thus, said the court, as a matter of comity, the judgment should be recognized as valid in New York, since *Rosenstiel* v. *Rosenstiel* (16 N Y 2d 64) had erased any theretofore existing distinctions between the constitutional mandate of full faith and credit and the principle of comity.

With respect to the wife's contention that her husband's fraudulent misrepresentations induced her not to defend the divorce action in Thailand, Judge WALSH (citing *Lynde* v. *Lynde*, 162 N. Y. 405) held that, since the foreign court had acquired jurisdiction of the person of the plaintiff, it retained jurisdiction until the final decree was rendered and that therefore the decree must be regarded as valid and binding until set aside by the Thailand court. Judge WALSH also held that, while the purported fraud may have induced the Thailand court to commit error, the resulting judgment is susceptible to attack for such

fraud in Thailand and not in New York (citing *Hunt* v. *Hunt,* 72 N. Y. 217).[1]

## THE LAW

I believe that the determination of the Special Term should be reversed and a new trial granted. The issue is not whether the Thai court had jurisdiction of the parties but whether the plaintiff was denied her day in court by the misrepresentation of her husband that he was not going to proceed with the action and whether that claim of fraud is litigable in this State.

In *United States* v. *Throckmorton* (98 U. S. 61, 65) the court said: " There are no maxims of the law more firmly established, or of more value in the administration of justice, than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy; namely, *interest rei publicæ, ut sit finis litium,* and *nemo debet his vexari pro una et eadam causa.*"

But it then added (pp. 65–66):

" But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. *Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court, a false promise of a compromise;* or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,— *these, and similar cases which show that there has never been a real contest in*

---

1. The *Lynde* case is not in point, for there the husband contested the action and the Court of Appeals held that, since jurisdiction had been obtained over the husband by the New Jersey court, it could not be divested by his *refusal* to appear in the subsequent stages of the proceeding. The *Hunt* case, if anything, is an authority contrary to that for which it was cited by the learned Justice, for, while it upheld the validity of the Louisiana decree under the facts of that case, the court (per FOLGER, J.) said (p. 225): " However, the jurisdiction of the court of another State in which a judgment has been rendered, is always open to inquiry in the courts of this State; and if that court has exceeded its jurisdiction, or has not obtained jurisdiction of the parties, the proceedings are *coram non judice* and void. (*Dobson* v. *Pearce,* 12 N. Y. 156; *Kinnier* v. *Kinnier,* 45 id. 535.) *Or if the judgment has been procured by fraud upon the legal rights of the party against whom it is rendered, it may be questioned collaterally for that reason in the courts of this State.* (See cases last cited, and *Kerr* v. *Kerr,* 41 N. Y. 272.) " (Emphasis supplied.)

*the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment* or decree, and open the case for a new and a fair hearing. See Wells, Res Adjudicata, sect. 499; *Pearce* v. *Olney,* 20 Conn. 544; *Wierich* v. *De Zoya,* 7 Ill. 385; *Kent* v. *Richards,* 3 Md. Ch. 392; *Smith* v. *Lowry,* 1 Johns. (N. Y.) Ch. 320; *De Louis et al.* v. *Meek et al.,* 2 Iowa, 55.

"In all these cases, and many others which have been examined, relief has been granted, on the ground that, by some fraud practised directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court" (emphasis supplied).

In consonance with the rule there laid down, the courts prior and subsequent thereto have clearly held: "It is a rule well settled, that every judgment may be impeached for fraud, and this applies as well to judgments of our own State, as to those of other States or foreign judgments; but what will constitute fraud sufficient to vitiate a judgment, and who can make the objection, and under what circumstances it can be interposed, are material questions.

"The rule is that there must be facts which prove it to be against conscience to execute the judgment, and which the injured party could not make available in a court of law, or which he was prevented from presenting by fraud or accident, unmixed with any fraud or negligence in himself or his agents" (*Kinnier* v. *Kinnier,* 45 N. Y. 535, 542–543).

In *Marine Ins. Co. of Alexandria* v. *Hodgson* (7 Cranch [11 U. S.] 332, 336) Chief Justice Marshall said: "that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a Court of law; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a Court of Chancery."

In *Stilwell* v. *Carpenter* (2 Abb. N. C. 238, 263–264) the court said: "The question of fraud, which is open to examination in such case, is as to something which intervened in the proceedings by which the judgment was obtained (*Sample* v. *Barnes,* 14 *How.* U. S. 70), and it must have occurred in the very concoction or procuring of the judgment, and not have been known to the opposite party at the time, and for not knowing which, he is not chargeable with neglect or inattention (*Patch* v. *Ward,* L. R., 3 Chy. App. 203). The fraud must consist in something of which the complaining party could not have availed himself

in the court giving the judgment, or of which he was prevented from availing himself there by fraud (*Mar. Ins. Co.* v. *Hodgson,* 7 *Cranch,* 333; *Lansing* v. *Eddy, J. C. R.* 49; *Duncan* v. *Lyon,* 3 *J. C. R.* 356), which rule may have the reasonable extension, that it must also be something of which he could not have availed himself, to have restrained the proceedings in the court in which the judgment or decree was obtained, by bringing suit, in a court having power to temporarily enjoin them and to so grant a relief as to make it available in those proceedings (*Lansing* v. *Eddy,* supra).

"There is a *dictum* of Lord LOUGHBOROUGH, in *Mitchell* v. *Harris* (2 *Ves. Jr.* 129), which expresses what is doubtless the law, that a bill in equity showing that a judgment at law was obtained against conscience by concealment, would open it to relief in a court of equity (See *Medcalf* v. *Ives,* 1 *Atk.* 63; *Lankton* v. *Scott, Kirby,* 358; *Williams* v. *Lee,* 3 Atk. 224; *Le Guen* v. *Gouveneur,* 1 *Johns. Cases,* 456), with this qualification or explanation, however — where the fact withheld was essential to the determination of the suit (*Hull* v. *Blake,* 13 *Mass.* 153)."

In *Stevens* v. *Central Nat. Bank of Boston* (144 N. Y. 50, 62) the court noted: "The rule is well settled that courts will set aside as a nullity a judgment, decree or award obtained by fraud. (*Hackley* v. *Draper,* 60 N. Y. 88; *State of Michigan* v. *Phoenix Bank,* 33 id. 8; *Dobson* v. *Pearce,* 12 id. 156; *Wright* v. *Miller,* 8 id. 9; *Whittlesey* v. *Delaney,* 73 id. 571; *Tiernan* v. *Wilson,* 6 Johns. Ch. 411; *Campbell* v. *Railroad Co.,* 1 Woods, 368)."

In *Davis* v. *Cornue* (151 N. Y. 172, 179) the court held: "that a court of one state may, where it has jurisdiction of the parties, determine the question whether a judgment between them, rendered in another state, was obtained by fraud, and, if so, may enjoin the enforcement of it."

In *Brone* v. *Golde* (267 N. Y. 284, 288) the court said: "We agree with the courts below that plaintiff has here sufficiently established *prima facie* the existence of a cause of action, and that defendants have sufficiently shown fraud in the means of procuring the Pennsylvania judgment to entitle them at least to a trial of the issues raised by their second defense. (See *Dobson* v. *Pearce,* 12 N. Y. 156; *Hunt* v. *Hunt,* 72 N. Y. 217; *Gray* v. *Richmond Bicycle Co.,* 167 N. Y. 348; *Trebilcox* v. *McAlpine,* 62 Hun, 317)."

In *Gray* v. *Richmond Bicycle Co.* (*supra,* p. 359), the court, citing *Davis* v. *Cornue* (*supra*) and *Hunt* v. *Hunt* (*supra*), as well as Freeman on Judgments (4th ed., § 576) and Black on Judgments (§ 903), said: "It was not necessary for the plaintiff to go into the state of Indiana and obtain relief from the judgment through

its courts, for, as we have held, ' a court of one state may, where it has jurisdiction of the parties, determine the question whether a judgment between them, rendered in another state, was obtained by fraud, and, if so, may enjoin the enforcement of it, although its subject-matter is situated in such other state.' (*Davis* v. *Cornue,* 151 N. Y. 172, 179.) The assertion of the foreign judgment as a bar in this action was an attempt to enforce it indirectly, and it was the duty of the trial court to send the case to the jury with the instruction that if they found the judgment was procured by fraud, it could not be asserted as a bar in this state.''

In *Parker* v. *Hoefer* (2 N Y 2d 612, 616) the court noted: '' Because there is a full faith and credit clause, defendant may not a second time challenge the validity of plaintiff's right which has ripened into a judgment (*Magnolia Petroleum Corp.* v. *Hunt,* 320 U. S. 430), which is to say that a judgment of a court having jurisdiction of the parties and of the subject matter operates as *res judicata in the absence of fraud* or collusion '' (emphasis supplied).

In adopting that quotation and interpreting it, the court in *Oldham* v. *McRoberts* (21 A D 2d 231, 234) said: '' Stated otherwise, a State court is required to recognize the judgment of a court of another State unless the court rendering the judgment was without jurisdiction or the judgment was obtained by extrinsic fraud.''

In *White* v. *Reid* (70 Hun 197), except for the fact that it was not a matrimonial action, the facts closely paralleled those in the case at bar. There, the plaintiffs brought an action in this State upon a judgment obtained by them in Massachusetts. The defendant admitted he had appeared and interposed an answer in the Massachusetts action. He alleged, however, (1) that the plaintiffs had fraudulently represented that the Massachusetts action would be discontinued by them, (2) that he had relied upon the misrepresentations; and (3) that the plaintiffs had fraudulently and without his knowledge procured the Massachusetts judgment.

The lower court directed a verdict in favor of the plaintiffs upon the pleadings, upon the ground that the fraud, for which a judgment may be avoided, must be such as to prevent the defendant from ever appearing in the lawsuit and that when the defendant appeared in the foreign State all subsequent proceedings in that lawsuit, including the judgment, were conclusive upon him. That is precisely the reasoning adopted by Judge WALSH in dismissing the plaintiff's complaint here. However, in reversing that determination the appellate court said

(pp. 198–199): "The Constitution of the United States provides that full faith and credit shall be given in this State to the public acts, records and judicial proceedings of every other State. But such provision does not give greater force to the judgment of a sister State than that which obtains in our own State. Many cases have occurred in our own State where the validity of judgments has been attacked upon the ground of fraud, and where the defendant has been deprived of his defense by the fraud of the plaintiff with the connivance of his attorneys, and we are somewhat surprised that the jurisdiction of the court in this respect should be questioned."

The textwriters are in agreement with the cases. Thus in Pomeroy's Equity Jurisprudence (vol. 3 [5th ed.], § 919a) that learned author said: "When a judgment fraudulently recovered in one court is sued upon in another court, whether the fraud can *there* be set up to defeat its enforcement has been questioned. There can be no doubt, however, that under these circumstances, wherever the reformed procedure prevails, the fraud may be set up by way of *equitable* defense, especially if the affirmative relief of cancellation is sought.

"*The equitable jurisdiction to cancel and set aside or to restrain judgments and decrees* of any court which have been obtained by a fraud practiced upon the court and the losing party, is well settled and familiar" (emphasis in original).

And again in section 919b of the same work, Professor Pomeroy said: "It must appear that the fraud was practiced in the very act of obtaining the judgment. In other words, a court of equity will set aside or annul a judgment at law on the ground of fraud only where the fraud is extrinsic or collateral to the matter tried in the original action, and not where the fraud was in the matter on which the judgment was rendered. *Fraud, whether committed on the court or on the opposite party or on both, may be extrinsic within the meaning of the rule when its effect is to prevent the unsuccessful party from having a trial or from presenting his case fully, as, for instance, keeping him away from court by false promise of compromise,* or purposely keeping him in ignorance of the pendency of the action" (emphasis supplied).

Professor Beale in his treatise The Conflict of Laws (vol. 2, § 440.4) states the law applicable here: "*What Constitutes Fraud.*— In general the rules as to what constitutes fraud in the procurement are the same both as to judgments of sister states and as to judgments of foreign countries. A distinction is made between extrinsic and intrinsic fraud. Intrinsic fraud is fraud which goes to the existence of a cause of action, and is held to

be no defense. The American courts hold that a foreign judgment cannot be attacked on the ground that it was procured by false testimony * * *.

"The fraud which will be available to a defendant in his attack upon a foreign judgment, in the main, is fraud which has deprived him of the opportunity to make a full and fair defense. There are many varieties of such fraud. *Thus, where the defendant failed to present his case because the plaintiff agreed to drop the suit or to compromise the case or notified the defendant that the proceeding had been dismissed, or by any other agreement or promise lulled the defendant into a false security, the judgment may be attacked by the defendant*" (emphasis supplied).

In American Law Reports (Second Series) the rule is concisely stated as follows (55 ALR 2d 687): "Extrinsic fraud has been defined as including fraud collateral to the question examined and determined in the action; fraud practiced in obtaining the judgment which may have prevented the defendant from having an adversary trial of the issue, or preventing the defendant from presenting fully and fairly his side of the cause * * *. Included in such definition are false representations * * * false promises of compromise".

### CONCLUSION

Upon the undisputed testimony in this case the plaintiff was "robbed" of her opportunity to make her defense in the Thai court by reason of the defendant's fraud and misrepresentation that he would discontinue the action which he had instituted against her (cf. *Fuhrmann* v. *Fanroth,* 254 N. Y. 479, 482). Therefore, since she never had an opportunity to litigate the question determined in the Thai court, the judgment there obtained against her is not a bar to this action under the theory of those cases which prevent the relitigation in other states of issues already adjudicated (cf. *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, 438). Accordingly, the judgment appealed from should be reversed, on the law, and a new trial granted, with costs to appellant to abide the event. The questions of fact have not been considered.

LATHAM, Acting P. J., GULOTTA, BRENNAN and BENJAMIN, JJ., concur.

Judgment of the Supreme Court, Westchester County, dated March 8, 1971, reversed, on the law, and new trial granted, with costs to appellant to abide the event. The questions of fact have not been considered.