■ WILMA SHAW, Respondent, v PETER SHAW, Appellant. — In a matrimonial action, defendant appeals from an order of the Supreme Court, Suffolk County (Geiler, J.), dated September 28, 1981, which denied his motion to set aside (1) a judgment of divorce entered July 21, 1980, and (2) a stipulation of settlement, dated February 4, 1981, relating, inter alia, to the division of certain property which had been jointly owned. Order reversed, on the law, without costs or disbursements, and matter remitted to Special Term for a hearing in accordance herewith. The pertinent facts and proceedings are set forth in the memorandum of our colleague, Justice Presiding Mangano. In brief summary, defendant husband seeks to vacate a judgment of divorce on the ground that the judgment was fraudulently obtained by the plaintiff wife without opposition from defendant, by lulling him into believing that the parties might reconcile. According to his motion papers, defendant was served in May or June of 1980 with a summons. After receiving the summons, defendant contacted the plaintiff to discuss the divorce action, and the parties decided to attempt a reconciliation. With this in mind, the parties went to Barbados. During their stay in Barbados and, according to defendant, unbeknownst to him, a final judgment of divorce was granted to the wife on July 16, 1980 and entered on July 21, 1980, on the ground of cruel and inhuman treatment. While not setting forth in his motion papers the nature of any defenses he may have to the divorce complaint, defendant requested permission to interpose an answer. On February 4, 1981, defendant, still unrepresented by counsel, entered into a "stipulation of settlement" concerning, among other things, the partition and division of certain real property. As detailed at length in Justice Presiding Mangano's memorandum, defendant alleges that this agreement was the product of overreaching or fraud on the part of plaintiff and her attorney. We concur with our dissenting colleague that a hearing is needed to resolve the question of whether the stipulation of settlement should be set aside as the result of overreaching or fraud on plaintiff's part. We disagree with the view, however, that defendant is not entitled to a hearing to determine whether the judgment of divorce should be vacated. A recital of precedent is hardly necessary to support the maxim that a default judgment will ordinarily not be vacated absent a showing that there exists a reasonable excuse for the default and that the party in default possesses a meritorious cause of action or defense. This rule applies in matrimonial actions, albeit circumspect consideration is necessary in that context (see Levy v Levy, 67 AD2d 998). However, defendant's motion to vacate the judgment of divorce is not brought on the ground of excusable default as delineated in CPLR 5015 (subd [a], par 1). Rather, his motion to vacate, being predicated on an accusation that he was lulled into a false sense of security with respect to the divorce action, in essence an allegation of extrinsic fraud (see Tamimi v Tamimi, 38 AD2d 197), is brought pursuant to CPLR 5015 (subd [a], par 3). That paragraph allows a judgment to be vacated upon the ground of "'fraud, misrepresentation, or other misconduct'" (see Oppenheimer v Westcott, 47 NY2d 595, 603). In our opinion, a movant seeking relief from a judgment under this paragraph, at least on the ground of extrinsic fraud, need not show that he has a meritorious defense or cause of action. Extrinsic fraud may be defined as a fraud practiced in obtaining a judgment such that a party may have been prevented from fully and fairly litigating the matter (see Tamimi v Tamimi, supra, and authorities cited therein). While it certainly could be said that extrinsic fraud is a ground for excusing a default, the Legislature has distinguished it from other grounds which serve as bases for

excusing defaults (CPLR 5015, subd [a], par 1). Likewise, a failure to be properly served with process might be considered a reasonable excuse, justifying the vacatur of a default. Nonetheless, the Legislature has set aside a distinct paragraph for such motions (see CPLR 5015, subd [a], par 4). In fact, the Legislature has gone so far as to create a special subdivision allowing an administrative judge to bring a proceeding to vacate default judgments *en masse* where "obtained by fraud, misrepresentation, illegality, unconscionability, lack of due service, violations of law, or other illegalities" (CPLR 5015, subd [c]; see Judiciary Law, former § 217-a). There is a good reason to treat motions to vacate default judgments differently, dependent on whether extrinsic fraud, lack of jurisdiction, or some other ground is alleged. Nowhere is this clearer than in the case of a lack of proper service. Absent proper service, a default judgment is a nullity, and, once it is shown that there was no service, the judgment must be unconditionally vacated (see *McMullen v Arnone,* 79 AD2d 496). Whether or not the defendant has a meritorious defense is irrelevant to the question of whether the judgment should be vacated for a lack of jurisdiction (*Pine v Town of Hoosick,* 56 AD2d 692; *Queensboro Leasing v Resnick,* 78 Misc 2d 919). The existence of a meritorious defense only becomes significant in determining whether to open a default once it is clear that service has properly been made (*Mayers v Cadman Towers,* 89 AD2d 844). A judgment obtained without proper service of process is invalid, even when the defendant has actual notice of the lawsuit, because as a prophylactic measure such a rule is necessary to prevent "sewer service" (see *Feinstein v Bergner,* 48 NY2d 234, 239-241). "Sewer service" is, however, but one species of fraud that the Legislature and courts are concerned with vis-à-vis invalid default judgments. Extrinsic fraud, which includes the touting of someone away from the courthouse, to prevent any possibility of an adverse result, is another (Siegel, Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 5015, p 365, 1964-1982 Supp Pamph). In fact, from a policy point of view, there is little if any difference between a default judgment obtained by "sewer service" and one obtained where the defendant might be properly served, but then, through some device, trick, or deceit, is led to believe that he or she need not defend the suit. Both are frauds on the court and on the defendant (see *Matter of Holden,* 271 NY 212, 218). It is not surprising, therefore, that a judgment obtained through extrinsic fraud, like one obtained without proper service, is considered a nullity (*Tamimi v Tamimi,* 38 AD2d 197, *supra*). The court will have no part in enforcing a judgment which was procured by a fraud practiced on it (*Matter of Holden, supra*). The inescapable conclusion, in our view, is that, just as in the case where there is improper service or no service, a default judgment obtained through extrinsic fraud should be vacated without any requirement that the movant show a meritorious defense. Such a judgment is a nullity, irrespective of the question of merit. One other contention in the partial dissent requires discussion. It is argued that, quite apart from whether defendant's moving papers were deficient because they did not set out any meritorious defense, "defendant should be estopped from attacking the underlying divorce judgment". The present record does not support a finding of estoppel, since there is no evidence that plaintiff has been prejudiced by virtue of defendant's conduct subsequent to his learning of the divorce judgment (see *Nassau Trust Co. v Montrose Concrete Prods. Corp.,* 56 NY2d 175, 184). More on point in this context than the doctrine of estoppel is that of waiver. A judgment which might otherwise be subject to vacatur may, in certain circumstances, not be disturbed if the proponent of such a measure has, by work or deed, waived his right to relief (*Marco v Sachs,* 10 NY2d 542, 550; *Palisi v Yanarella,* 76 NYS2d 209, affd 272 App Div 1070; cf. *New York Tel. Co. v Jamestown Tel. Corp.,* 282 NY 365). Waiver, being a

matter of intent (*Nassau Trust Co. v Montrose Concrete Prods. Corp., supra,* p 184), is generally an issue of fact to be established at a hearing or trial (*422 W. 15th St. v Johnson,* 258 App Div 227). Whether defendant has waived any complaint he may have on the ground of extrinsic fraud is not, on this record, something which can be resolved as a matter of law. We conclude, therefore, that a hearing should be held wherein the questions of extrinsic fraud and waiver can be explored and determined. If defendant has not waived his right to question the validity of the divorce judgment and if extrinsic fraud exists, then the judgment should be vacated, and defendant should be given the opportunity, as he requested in his motion at Special Term, to interpose an answer. In addition, the hearing should encompass the issue of whether the "stipulation of settlement" is tainted by overreaching or other improper conduct on plaintiff's part (see *Christian v Christian,* 42 NY2d 63). Gibbons, Gulotta and Thompson, JJ., concur.

Mangano, J. P., concurs in part and dissents in part, with the following memorandum: Plaintiff wife and defendant husband were married on January 21, 1966 in England, and have three children who are presently 14, 8 and 4 years old. In 1980, plaintiff instituted a divorce action against defendant alleging that defendant had engaged in cruel and inhuman conduct toward her. Defendant defaulted in answering, and a judgment of divorce dated July 16, 1980 and entered July 21, 1980 was granted on the following ground: "In or about June, 1975, defendant committed physical violence by hitting plaintiff with what is described as 'karate chop' and, on countless occasions prior and subsequent to such incident, defendant was always in a rage of temper, petulant in manners used to utter vulgar, abusive and scurrilous language against the plaintiff, which acts were cruel and inhuman and endangered the plaintiff". The judgment of divorce awarded the plaintiff "the sum of $200 per week for child support and $100 per week for alimony or the total sum of $300 per week until the youngest child is 21 or sooner emancipated and the plaintiff remain [*sic*] unmarried". The judgment also awarded plaintiff exclusive possession of the marital premises. In January, 1981, plaintiff instituted an action for partition of certain properties which had been owned jointly by the parties prior to their divorce and were now owned by the parties as tenants in common by virtue of the divorce. Defendant, without the benefit of counsel, entered into negotiations with plaintiff and her attorney and, as a result thereof, a stipulation of settlement of the partition action as reached on February 4, 1981. Insofar as is pertinent to the case at bar, the defendant, by the express terms of the stipulation of settlement, agreed to convey his one-half interest in the marital residence to the plaintiff, giving her fee absolute in said property, and also agreed, along with his wife, to convey their respective shares of income-producing property located on Rogers Avenue, Brooklyn, to the three children. Defendant also agreed to manage and administer this property for the benefit of the minor children. In consideration of this partition defendant was relieved of the $100 per week alimony award provided for in the divorce judgment. By order to show cause dated August 12, 1981, the defendant moved to set aside (1) the judgment of divorce dated July 16, 1980 and entered July 21, 1980 and (2) the stipulation of settlement dated February 4, 1981. In support of his motion, defendant acknowledged that a divorce action was commenced by plaintiff against him in June, 1980. Defendant further alleged that he and his wife took a vacation in July, 1980 to Barbados in order to attempt a reconciliation "and unbeknownst" to him plaintiff had a final judgment of divorce entered against him upon default. With respect to the settlement of the partition action, defendant alleged that upon his return from his vacation with plaintiff in Barbados, he received a letter from plaintiff's attorney asking him to discuss a property settlement. Defendant, without assistance of counsel,

participated in negotiations with plaintiff and her attorney wherein he indicated that he was having difficulty in making the payments of $300 per week. Negotiations broke down, and thereafter plaintiff instituted a partition action in January, 1981. Once again defendant, without benefit of counsel, entered into settlement discussions of the partition action, which resulted in the stipulation of settlement of that action on February 4, 1981. According to defendant, it was his understanding that the agreement would reflect that he would "continue to own the property" on Rogers Avenue which would enable him to pay the $200 a week child support, that he never agreed to convey this income-producing Rogers Avenue property to his three minor children, as the agreement provides, but only agreed that his interest in said property would pass to his children upon his death, and that the agreement, which provided for the present transfer of his interest in this income-producing property to his children and continued his obligation as originally set out in the divorce judgment to pay $200 per week in child support until the youngest child reached 21, was clearly the result of overreaching by the plaintiff and her attorney. In opposition to defendant's motion, plaintiff alleged in an opposing affidavit that she and defendant went to Barbados in an attempt to resolve their differences "on a formal and business-like basis, and especially on a platonic basis", but that attempt failed. Defendant advised her that he wished "no counsel" regarding the divorce proceeding. With respect to the settlement of the partition action plaintiff alleged that defendant was advised by her lawyer that he was free to take the agreement to counsel of his choice for review, that defendant acknowledged that he understood the terms clearly and did not need an attorney, and that the agreement, by its express terms indicated that defendant declined counsel, understood the terms thereof, and was signing it freely and voluntarily. It is a well-established principle of law that a motion to vacate a default judgment is addressed to the discretion of the court (see *State Bank v Guiseppi Estates,* 44 AD2d 878, 879; *Harris v Harris,* 35 AD2d 894), and should not ordinarily be granted in the absence of (1) a valid excuse and (2) a demonstration of merit (see 5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.04; *Sorgie v Dalton,* 90 AD2d 790; *Small v Applebaum,* 79 AD2d 572; *Wall v Bennett,* 33 AD2d 827; CPLR 5015, subd [a], par 1). The rule is not, however, applied with equal rigor in matrimonial actions where the State's interest in the marital *res* and allied issues (such as child support and custody) have called forth a more liberal approach, favoring dispositions on the merits (see *Levy v Levy,* 67 AD2d 998; *Hewlett v Hewlett,* 63 AD2d 977; *Krupinski v Krupinski,* 20 AD2d 719; *Vanderhorst v Vanderhorst,* 282 App Div 312, 314). Nevertheless, this liberality is not without its limits, and the court's beneficence in this specific area should not be bestowed on one who, although alleging a valid excuse for his default such as the extrinsic fraud alleged at bar (see, generally, Ann., 22 ALR2d 1312, 1332), fails to even submit a proposed answer with his moving papers, or in any way indicate that he has a meritorious defense to the underlying divorce action (*Biamonte v Biamonte,* 57 AD2d 1052; cf. *Lesko v Lesko,* 79 AD2d 1100). Nor has defendant, in his moving papers, attacked in any way the financial provisions of the divorce decree as being the product of misrepresentation by the plaintiff to the court (*Rizzo v Rizzo,* 50 AD2d 915; *Rutledge v Rutledge,* 60 AD2d 646). Under these circumstances, Special Term did not abuse its discretion in denying so much of defendant's motion which sought to vacate the divorce judgment entered July 21, 1980. Moreover, defendant should be estopped from attacking the underlying divorce judgment by virtue of his conduct subsequent to the entry thereof (see 24 Am Jur 2d, Divorce and Separation, § 464). By defendant's own admission in his moving papers, he became aware of the monetary provisions of the divorce judgment sometime between July, 1980 and January, 1981.

Instead of moving to vacate the divorce judgment at that time, he entered into negotiations with plaintiff and her counsel in order to reach an agreement regarding the disposition of the remaining properties owned by the parties. Moreover, the record indicates that plaintiff specifically alleged in her partition action, which was commenced in January, 1981, six months after the divorce judgment was entered, that (1) the parties were divorced in July, 1980 (a copy of the divorce decree was annexed to the complaint in the partition action), (2) that upon the dissolution of the marriage, the Rogers Avenue property and the marital residence in Bay Shore were owned by the parties as tenants in common, and (3) that partition and division of these properties was sought. Even at this late date defendant did not challenge the underlying divorce judgment. Instead, he again entered into settlement negotiations of this partition action and does not even now contest one of the integral parts thereof, i.e., the conveyance of his one-half interest as tenant in common of the marital premises to his wife rendering her the owner of the marital home in fee absolute. Under these circumstances, defendant should be estopped from challenging the underlying divorce judgment (*Baily v Baily,* 44 Pa 274; cf. *Connell v Connell,* 2 AD2d 478, 479). However, with respect to the stipulation of settlement of the partition action (which is incorrectly designated by Special Term as a "separation agreement") it is my view that "the serious nature of defendant's allegations concerning his execution, without the benefit of independent counsel" (*Pisano v Pisano,* 71 AD2d 670), of the stipulation, and in particular, that provision wherein he transferred his part ownership of valuable income-producing property to his children, precluded Special Term from denying that branch of defendant's motion which sought to vacate the stipulation on the basis of conflicting affidavits without first conducting an evidentiary hearing (*Levine v Levine,* 56 NY2d 42, 49; *Christian v Christian,* 42 NY2d 63; *Pisano v Pisano, supra; Perlmutter v Perlmutter,* 65 AD2d 601).