**Elizabeth BARRETT, Individually and as Administratrix of the Estate of Harold Blauer, Deceased, Plaintiff,**

v.

**UNITED STATES of America, James Cattell, and Newton Bigelow, Defendants.**

**No. 76 Civ. 381 (CBM).**

United States District Court, S.D. New York.

Dec. 10, 1986.

Baer Marks & Upham by Deborah R. Linfield, Eugene R. Scheiman, and Richard Kelly, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Beth Kaswan, Richard M. Schwartz, Asst. U.S. Attys., New York City, for Federal defendants.

Bower & Gardner by John J. Bower, Michael Futterman, Nancy Gurren, Ann F. Vinci, and Karen L. Hymowitz, New York City, for defendant James Cattell.

Pileckas & Pileckas by Paul L. Pileckas, Rome, N.Y., for defendant Newton Bigelow.

## OPINION

MOTLEY, Senior District Judge.

This lawsuit arises out of the tragic death of Harold Blauer which occurred on January 8, 1953 as a result of his injection with an experimental drug, EA–1298, a mescaline derivative, while he was a patient at the New York State Psychiatric Institute, a state mental facility. The drug had been supplied to the Psychiatric Institute pursuant to a contract between the Institute and the United States Army Chemical Corp, which was interested in possible chemical warfare applications of the substance. Not suspecting any such extraordinary backdrop to Harold Blauer's death, in 1953 his estate filed a lawsuit against New York State sounding in medical malpractice. This suit was eventually settled in 1955 for $18,000, with the United States secretly paying half the amount.

Plaintiff Elizabeth Barrett, Blauer's daughter, did not learn of the United States' role in her father's death until 1975 when the Army notified her of the Chemical Corp's involvement in the Psychiatric Institute research project during which Harold Blauer died. Shortly thereafter, she filed this lawsuit in her individual capacity as well as in her capacity as administratrix of the estate of Harold Blauer.

The facts and allegations out of which this current lawsuit arises have been extensively discussed in the numerous decisions already rendered in this case by both the district court and the Court of Appeals on a variety of issues. *See, e.g., Barrett v. United States,* 798 F.2d 565 (2d Cir.1986); *Barrett v. United States,* 689 F.2d 324 (2d Cir.1982), *cert. denied* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); *Barrett v. United States,* 622 F.Supp. 574 (S.D.N.Y. 1985). For purposes of the present opinion, it will suffice to say that in addition to suing the United States under the Federal Tort Claims Act, 28 U.S.C. Sections 1346(b), 2671 *et seq.* for its alleged negligence in

creating and conducting the drug experiment project, plaintiffs have sued the numerous individuals allegedly involved in the death and the events surrounding it under 42 U.S.C. Section 1983 for violations of the constitutional rights of Harold Blauer, his estate, and its beneficiaries. Of these individual defendants, who at one time included both state and federal officials and employees, only two remain, Dr. James Cattell, the doctor at the Psychiatric Institute who actually administered the fatal injection to Harold Blauer, and Dr. Newton Bigelow, the New York State Commissioner of Mental Hygiene at the time Mr. Blauer died.

Plaintiffs have asserted two distinct constitutional claims against these individuals under Section 1983. The first arises out of the individual defendants' alleged role in depriving Harold Blauer of his liberty and life without due process of law by causing him to participate in the Army experiments at the Psychiatric Institute. This first claim has frequently been referred to in this suit as plaintiffs' "pre-death claim." Plaintiffs' second claim arises out of the individual defendants' alleged role in an illegal cover-up by federal and state officials of the complete facts of Harold Blauer's death. This claim has frequently been referred to as plaintiffs' "post-death claim." The gravamen of this second claim is that by concealing and misrepresenting the true facts of Harold Blauer's death, namely those facts going to the Army's involvement and purpose in the experimentation, Harold Blauer's estate and its beneficiaries were unconstitutionally deprived of their property rights in a potential cause of action against the federal government, and in the incremental value, had the full circumstances of the death been known, of the lawsuit that they did file and settle in the 1950's. *See Barrett v. United States,* 689 F.2d 324, 331–33 (2d Cir.1982).

Defendants assert that plaintiffs' second cause of action, based on the alleged cover-up, for unconstitutional deprivation of property is barred by the election of remedies requirement imposed in this Circuit for

actions arising out of allegedly fraudulent settlements. Subsequent to the close of plaintiffs' case at trial, and after extensive argument on this and related issues, the court has determined for the reasons that follow that plaintiffs' cause of action under Section 1983 for unconstitutional deprivation of property as a result of the alleged illegal cover-up of the true facts of Harold Blauer's death must be dismissed.

*Discussion*

It is well-established under New York State law that where a party seeks to recover damages upon learning that he has been fraudulently induced to settle a meritorious claim, he has two options. He may either ratify the settlement agreement and sue for fraud, or else rescind the settlement agreement and sue anew on the underlying wrong. *Slotkin v. Citizens Casualty Co. of New York,* 614 F.2d 301, 312 (2d Cir.1979); *cert. denied,* 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980); *Byrnes v. National Union Insurance Co.,* 34 A.D.2d 872, 310 N.Y.S.2d 781 (1970).

The essence of plaintiffs' second claim in this lawsuit, that is, their Section 1983 claim for unconstitutional deprivation of property, is that the estate of Harold Blauer and its beneficiaries were fraudulently induced to settle their claims against all parties arising out of Harold Blauer's death for an amount much less than the full value of these claims. *Barrett v. United States,* 689 F.2d at 331–32. Under *Slotkin* and the New York rule explicated therein, in order to sue for fraud in the inducement of this settlement, plaintiffs must ratify the settlement. *Slotkin,* 614 F.2d at 312 (New York rule allows "recission on the one hand or ratification and suit for damages on the other"). However, essential to plaintiffs' first and distinct claim in this lawsuit for the death of Harold Blauer, which has been brought against the United States under the Federal Tort Claims Act and against the individual defendants under Section 1983, is a repudiation of the 1955 settlement agreement. *Barrett v. United States,* 622 F.Supp. at 583–585 (S.D.N.Y.1985). Thus, the present case involves a situation where plaintiffs are attempting both to rescind the settlement and sue anew on the underlying wrong, and also to ratify the settlement in order to sue in fraud for the incremental value of the claim or claims that they were allegedly deprived of as a result of the fraud.

■ Even without the benefit of the Second Circuit's extensive discussion in *Slotkin* of a litigation presenting a similar configuration, it is evident that the two groups of claims which plaintiffs wish to pursue in the present lawsuit, both on Harold Blauer's death and on its cover-up, are mutually exclusive. Plaintiffs must either attempt to invalidate the 1955 settlement agreement and sue anew on all claims arising out of Harold Blauer's death, or instead ratify the settlement agreement and sue for fraud.

No injustice is worked by requiring an election of remedies in such a situation because regardless of which cause of action is selected the measure of damages is virtually identical. Furthermore, any amount obtained on the post-death cause of action would be essentially duplicative of any recovery that might be obtained for the pre-death cause of action, and thus could not actually be collected. *See Barrett v. United States,* 689 F.2d at 332, n. 1 (2d Cir.1982).

Were plaintiffs to choose the claim for Harold Blauer's death itself, i.e., were they to pursue their argument that the 1955 settlement is invalid and sue anew for Harold Blauer's death under the Federal Tort Claims Act and under Section 1983, they would, if successful, be entitled to damages against both the United States and the individual defendants for Blauer's conscious pain and suffering, and for those items of damages allowable under New York State's wrongful death statute. *See Parilis v. Feinstein,* 49 N.Y.2d 984, 406 N.E.2d 1059, 429 N.Y.S.2d 165 (1980). In addition, under Section 1983 they might also be entitled to punitive damages against the individuals for their roles in Harold Blauer's death. On this pre-death

claim, plaintiffs would furthermore be entitled to pre-judgment interest against the individual defendants.[1]

Were plaintiffs instead to choose the second, cover-up cause of action, i.e., to ratify the settlement and sue the individual defendants for the injury caused to Harold Blauer's estate and its beneficiaries by the alleged fraudulent cover-up, the damages would be almost precisely the same. If successful on their fraud claim, plaintiffs would obtain against the individual defendants the value of the lost suit against the United States arising out of Harold Blauer's death, as well as the value of the lost constitutional suit against any individual defendants for Harold Blauer's deprivation of life and liberty. As explained above, the value of these suits consists of an award for Harold Blauer's conscious pain and suffering, the wrongful death damages available under New York State law, possible punitive damages against the individuals for their roles in the death, and interest on these amounts from 1953 to the present. In addition, plaintiffs might possibly be able to obtain additional punitive damages for the individuals' wrongful conduct in connection with the alleged cover-up operation.[2] Thus, with the exception of a possible second set of punitive damages were plaintiffs to choose the cover-up claim, the damages recoverable under the pre-death claim and the damages recoverable under the post-death claim are identical.

Plaintiffs have already indicated to the court on the record that if required under *Slotkin* to make an election between their pre-death causes of action for Harold Blauer's death under both negligence and constitutional theories, and their post-death cause of action for unconstitutional property deprivation, they would elect the former.

This is not surprising. Were plaintiffs to choose their post-death cover-up claim for fraudulent misrepresentation and concealment instead of the pre-death claim for Harold Blauer's death itself, they would lose the United States of America as a defendant since fraud is not actionable under the Federal Tort Claims Act. 28 U.S.C. Section 2680(h); *Barrett v. United States*, 622 F.Supp. 574, 582 (S.D.N.Y.1985). Because, as explained above, the allowable damages under the pre-death claim are nearly identical to the damages available on the cover-up claim, there would be no compensating reason for plaintiffs to elect the fraud claim and thereby forfeit the Government defendant.

Accordingly, applying the *Slotkin* election analysis, and respecting plaintiffs' understandable preference for pursuing the pre-death causes of action, plaintiffs' cause of action against the individual defendants under Section 1983 for their alleged role in a fraudulent cover-up of the full truth about Harold Blauer's death is hereby dismissed.

■ In accordance with this dismissal of the post-death cover-up claims, Elizabeth Barrett in her individual capacity is also dismissed as a plaintiff in this suit. The claims made in this case arising directly out of Harold Blauer's death, both under the Federal Tort Claims Act and under Section 1983, belong solely to the estate of Harold Blauer. Thus, these remaining claims, the "pre-death claims," may be asserted by Elizabeth Barrett only in her capacity as administratrix of her father's estate. *Barrett v. United States*, 689 F.2d at 331 (2d Cir.1982) (Section 1983 claims); *Barrett v. United States*, 622 F.Supp. at 582 (S.D.N.Y.1985) (Federal Tort Claims Act claims).

---

**1.** Pre-judgment interest against the United States for suits brought under the Federal Tort Claims Act is not recoverable. 28 U.S.C. Section 1346.

**2.** Plaintiffs' claim that they are entitled to an additional award on the post-death cover-up claim for the value of the constitutional deprivation itself, and for the lost opportunities that Harold Blauer's children allegedly suffered as a

result of the claimed property deprivation is clearly without merit. Violations of constitutional rights have no intrinsic monetary value. *Memphis Community School District v. Statchura*, —— U.S. ——, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). The law compensates for deprivation of the *use* of money, i.e., for the consequences of property deprivation, by awarding interest.

While the court's decision under *Slotkin* dismissing plaintiffs' "post-death" cover-up claim makes it unnecessary to decide any substantive infirmities of this second cause of action under Section 1983, the court notes that a recent line of Supreme Court cases beginning in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) would pose a severe obstacle to the viability of the cover-up claim even if it had not been dismissed on other grounds. *Parratt* and subsequent cases have markedly limited the ability of all plaintiffs to sue under Section 1983 for deprivations of property under color of state law where the state itself provides an adequate post-deprivation remedy. While *Parratt* and its progeny appear directly applicable to plaintiffs' cover-up claim, the possible bar posed by this line of cases has never been addressed by the parties before now, nor has it ever been discussed or even alluded to in any of the numerous district and circuit court opinions already rendered in the present lawsuit.

The constitutional violation alleged in plaintiffs' "post-death" cause of action under Section 1983 is that Harold Blauer's estate and its beneficiaries were deprived of the incremental value of their 1955 lawsuit, and were deprived as well of their potential cause of action against the United States, as a result of the alleged conspiracy by state employees and others to cover-up the full circumstances surrounding Harold Blauer's death. It is clear that both of these items implicate property rights falling within the protection of the Fourteenth Amendment and that, accordingly, plaintiffs' cover-up cause of action under Section 1983 is more specifically one for unconstitutional deprivation of property. *Barrett v. United States*, 689 F.2d at 331–32 (2d Cir.1982).

 To state an unconstitutional deprivation of property claim under 42 U.S.C. Section 1983, however, it is not enough to have been deprived of property under color of state law. *Parratt*, 451 U.S. at 536–37, 101 S.Ct. at 1913. The property deprivation must also have been without due pro-

cess of law, for it is only against such lawless deprivations that the Fourteenth Amendment protects. *Id.* at 537, 101 S.Ct. at 1913, citing *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979). Thus, an unauthorized property deprivation under color of state law does not give rise to a Section 1983 claim where the state provides a remedy adequate to meet the due process requirements of the Constitution. *Parratt*, 451 U.S. at 543, 101 S.Ct. at 1916. This is true in the case of intentional, as well as merely negligent, property deprivations, *Hudson v. Palmer*, 468 U.S. 517, 530–32, 104 S.Ct. 3194, 3202–03, 82 L.Ed.2d 393 (1984), so long as the deprivation was occasioned by a random, unauthorized act, rather than by an established state procedure. *Id.* at 532, 104 S.Ct. at 3203. *Cf. Signet Construction Corporation v. Borg*, 775 F.2d 486, 491 (2d Cir.1985) (*Hudson v. Palmer* inapplicable where property deprivation is authorized and required by state law).

*Parratt v. Taylor* and *Hudson v. Palmer* make it clear that in situations where a state employee's unauthorized act—be it negligent or intentional—has resulted in a property deprivation, a post-deprivation remedy may well satisfy the requirements of procedural due process. *Parratt*, 451 U.S. at 538–42, 101 S.Ct. at 1914–16, *Hudson*, 468 U.S. at 533, 104 S.Ct. at 3203. Requiring a pre-deprivation review, explained the court, would be unreasonable and impracticable where the particular negligent or intentional behavior was essentially beyond the State's ken or control until after it had actually occurred. *Hudson*, 468 U.S. at 532–33, 104 S.Ct. at 3203.

 Under *Parratt* and *Hudson*, plaintiffs' present claim arising out of the alleged post-death cover-up conspiracy would appear to be one where due process does not demand a pre-deprivation remedy. It would be odd to say that the State had a responsibility to provide a pre-deprivation remedy prior to its employees' execution of a secret and clearly illegal conspiracy against Harold Blauer's estate. This would impose, in essence, an obligation on

the State to foresee and prevent all negligent or illegal conduct that its employees might contemplate. Instead, as to plaintiffs' claim that the estate and its beneficiaries were unconstitutionally deprived of their property as a result of the cover-up, the fundamental requirement of due process that a person be given an opportunity to be heard, and in a meaningful time and manner, *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), would appear to be satisfied by the post-deprivation remedies available to plaintiffs under New York State law.

New York State law provides several routes by which the wrong done to plaintiffs in the 1950's by the alleged fraudulent inducement of an inadequate settlement could be satisfactorily remedied. For example, upon discovering the alleged fraudulent cover-up by state employees, plaintiffs could have moved to reopen the 1955 Court of Claims judgment pursuant to New York C.P.L.R. 5015 on the basis of newly discovered evidence, N.Y.Civ.Prac.Law Section 5015(a)(2), *see Mully v. Drayn*, 51 A.D.2d 660, 378 N.Y.S.2d 187 (4th Dept. 1976), or for fraud on the court, N.Y.Civ. Prac.Law Section 5015 (a)(3), *see In re Bancroft*, 276 A.D. 485, 96 N.Y.S.2d 109 (4th Dept.1950).[3]

A different strategy available to plaintiffs under New York State law to remedy the claimed illegal property deprivation would be either to have voided the allegedly fraudulent 1955 release and sued anew on the claims arising out of Harold Blauer's death, *see Frehe v. Schildwachter*, 289 N.Y. 250, 45 N.E.2d 427 (1942), or else to have ratified the agreement and sued for fraudulent misrepresentation in order to recover the incremental value of

the original lawsuit. *Slotkin v. Citizens Casualty Co. of New York*, 614 F.2d 301, 312 (2d Cir.1979) (applying New York State law), *cert. denied*, 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980); *Byrnes v. National Union Insurance Co.*, 34 A.D.2d 872, 310 N.Y.S.2d 781 (3rd Dept.1970). It is conceivable that plaintiffs would have encountered statute of limitations barriers had they chosen the former route in 1975. However, as to the latter route, since New York law applies a discovery rule of accrual in fraud actions, N.Y.Civ.Prac.Law Section 213(8), the statute of limitations would have posed no obstacle to pursuing a cover-up claim in the New York courts after plaintiffs learned of the Army involvement in 1975. *See IIT v. Cornfeld*, 619 F.2d 909, 928–29 (2d Cir.1980).

Nor would plaintiffs have encountered any immunity impediment to suing Dr. Cattell and Dr. Bigelow, or any other individual state employees for fraudulent concealment or obstruction of justice. *Cf. Hudson v. Palmer*, 468 U.S. at 535–36, 104 S.Ct. at 3204–05 (adequacy of state remedy against individual state employee not compromised by potential immunity defense where applicable state law permitted claims for intentional torts). New York State does not extend immunity to its employees or officials for behavior that is unconstitutional or exceeds their proper authority. *Wein v. Carey*, 41 N.Y.2d 498, 500–01, 362 N.E.2d 587, 589, 393 N.Y.S.2d 955, 957 (1977); *New York State Thruway Authority v. Hurd*, 29 A.D.2d 157, 286 N.Y.S.2d 436 (3rd Dept. 1968).

The fact that the remedies available under New York State law might be less generous than those available in the federal courts under Section 1983[4] is of no sig-

---

**3.** While plaintiffs' allegations of perjury might not be sufficient to invoke CPLR 5015(a)(3), *see Jacobowitz v. Metselaar*, 268 N.Y. 130, 197 N.E. 169, *reh'g. denied sub nom Jacobwitz v. Herson*, 268 N.Y. 630, 198 N.E. 528 (1935), plaintiffs' extraordinary allegations that justice was obstructed by the removal of documents beyond the subpoena power of the New York courts would appear to come within the meaning of this rule. *See Shaw v. Shaw*, 97 A.D.2d 403, 467 N.Y.S.2d 231 (2nd Dept.1983); *Tomasello Bros.,*

*Inc. v. Friedman*, 57 Misc.2d 817, 293 N.Y.S.2d 688 (1968), *aff'd* 32 A.D.2d 652, 301 N.Y.S.2d 436 (2nd Dept.1969). *See also Barrett v. State*, 85 Misc.2d 456, 462, 378 N.Y.S.2d 946, 952 (1976).

**4.** For example, in a state law action to recover for the fraudulent cover-up, plaintiffs might not be able to recover punitive damages for the death of Harold Blauer, *see* E.P.T.L., Sec. 11–3.-2(b), and would not be able to collect the attor-

nificance in determining whether available state remedies satisfy the requirements of due process. *Parratt*, 451 U.S. at 544, 101 S. Ct. at 1917; *Hudson*, 468 U.S. at 534–35, 104 S.Ct. at 3204–05. *See McClary v. O'Hare*, 786 F.2d 83, 87–88 (2d Cir.1986). *Cf. Holloway v. Walker*, 784 F.2d 1287, 1293 (5th Cir.1986) (less favorable, but reasonable state procedural rules, do not render State postdeprivation remedy constitutionally inadequate under *Parratt* and *Hudson*), *reh'g denied* 790 F.2d 1170 (5th Cir.1986). Moreover, the fact that plaintiffs' legal claim might encounter numerous difficulties on the merits once it reached a state tribunal, *see Barrett v. State*, 85 Misc.2d 456, 378 N.Y.S.2d 946 (Ct.Cl.1975) (discovery application denied without prejudice because of perceived *res judicata* bar) is immaterial, for these difficulties go to the adequacy of plaintiffs' claim, rather than to the adequacy of state remedies, and indeed, are similarly encountered in the current proceeding in federal court. *See, e.g., Barrett v. Hoffman*, 76 Civ. 381, p. 20–21 (S.D.N.Y., Sept. 8, 1976) (decision reserved on whether claim is barred on *res judicata* grounds).

Plaintiffs have argued that their cover-up claim under Section 1983 implicates a violation of substantive rather than procedural due process, and that accordingly, *Parratt* and *Hudson* do not operate to bar it. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 677, 88 L.Ed.2d 662 (1986) (Stevens, J. concurring) (*Parratt/Hudson* state remedy doctrine inapplicable to violations of substantive due process); *McClary v. O'Hare*, 786 F.2d 83, 86 n. 3 (2d Cir.1986) (same). This position appears to be without merit in light of the fact that plaintiffs' claim of unconstitutional property deprivation resulting from the allegedly fraudulent conduct of a litigation, would seem on its face to state a violation of procedural rather than substantive due process. *See Holloway v. Walker*, 784 F.2d 1287, 1293 (5th Cir.1986) ("common sense" dictates that allegations of corrupt judicial conspiracy to deprive plaintiffs of property without

due process by thwarting their right to a fair trial is a matter of procedural, not substantive, due process), *reh'g en banc denied*, 790 F.2d 1170 (1986).

In this connection, it is noteworthy that in clarifying and applying the substantive due process exception to *Parratt* and *Hudson*, the circuit courts have done so almost exclusively in the context of life and liberty interests, rather than in the context of those property interests safeguarded solely by the Fourteenth Amendment. *See, e.g., McClary v. O'Hare*, 786 F.2d 83, 88–89 (2d Cir.1986); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500–01 (11th Cir.1985) (*en banc*), *cert. denied*, —— U.S. ——, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir.1985); *Olson v. Tyler*, 771 F.2d 277, 282 (7th Cir. 1985); *Augustine v. Doe*, 740 F.2d 322, 325–26 (5th Cir.1984). *See also Conway v. Village of Mount Kisco*, 758 F.2d 46, 48 (2d Cir.1985) (*Parratt/Hudson* rule limited to situations involving deprivations of property), *cert. granted sub nom, Cerbone v. Conway*, —— U.S. ——, 106 S.Ct. 878, 88 L.Ed.2d 915 (1986).

Plaintiffs have also contended that the behavior complained of in their cover-up claim was somehow "authorized," since perpetrated by state officials and employees. Thus, they argue, *Parratt* and *Hudson*, which address "random and unauthorized" behavior by persons acting under color of state law, are inapplicable. The court is dubious about the effectiveness of this tact as well. The entire thrust of *Parratt*, and also of *Hudson*, is to avoid " 'turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under Section 1983.' " *McClary v. O'Hare*, 786 F.2d 83, 87 (2d Cir.1986) (quoting *Parratt*, 451 U.S. at 544, 101 S.Ct. at 1917). *See also Holloway v. Walker*, 784 F.2d 1287, 1292 (5th Cir.1986) (alleged illegal conspiratorial acts of judicial officers are not "authorized" within the meaning of *Parratt* simply by virtue of the fact that defend-

ney fees that they have requested in the present

suit under 42 U.S.C. Section 1988.

ants had been authorized to act as judicial officers).

Furthermore, while the available state remedy rule of *Parratt* and *Hudson* is unquestionably inapplicable to deprivations of property pursuant to established state procedures, *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), *cited in Hudson*, 468 U.S. at 532, 104 S.Ct. at 3203; *Signet Construction Corp. v. Borg*, 775 F.2d 486, 491 (2d Cir.1985), what plaintiffs have alleged in their Section 1983 cover-up claim is not a property deprivation pursuant to established state procedures, but rather that in the unique context of Harold Blauer's death, state employees and others engaged in an obstruction of justice. Indeed, plaintiffs seek recourse for behavior that besides being exceptional, as opposed to "established," was explicitly illegal under New York State penal laws at the time it is alleged to have occurred. *Barrett v. United States*, 798 F.2d at 575–77 (2d Cir. 1986) (alleged cover-up activities were in clear violation of New York Penal Law as it stood in 1953–55). Thus, the argument that this behavior was somehow "authorized" by the State would appear to be seriously undermined merely by reference to state law directly to the contrary.

In sum then, *Parratt* and *Hudson* represent a fundamental reevaluation of the applicability of Section 1983 to property deprivation claims, and one that is surely relevant to plaintiffs' cover-up claims in the present lawsuit. While not deciding the issue, the court believes that if plaintiffs' Section 1983 cover-up claims were not precluded by *Slotkin* and the choice plaintiffs have made thereunder, the holdings of *Parratt* and its progeny would pose an exceedingly difficult, and perhaps insurmountable, challenge to these claims.

CONCLUSION

Plaintiffs' claims against Dr. Cattell and Dr. Bigelow under 42 U.S.C. Section 1983 for their alleged participation in a post-death cover-up of the true facts of Harold Blauer's death, said to have deprived the estate and its beneficiaries of their proper-

ty without due process of law by fraudulently inducing an inadequate settlement, are hereby dismissed. Plaintiffs' claims against the United States under the Federal Tort Claims Act, and the claims against Dr. Cattell and Dr. Bigelow under 42 U.S.C. Section 1983 for their alleged role in Harold Blauer's death itself are unaffected by this ruling. In addition, for the reasons stated in the opinion above, Elizabeth Barrett in her individual capacity is dismissed as a plaintiff from this suit. There thus now remains a single plaintiff in this suit, Elizabeth Barrett appearing solely in her capacity as administratrix of the estate of Harold Blauer.