■ BOLIVAR AGUIRRE, Respondent, v VILMA AGUIRRE, Appellant. [665 NYS2d 638] —Order, Supreme Court, Bronx County (Irene Duffy, J.), entered June 7, 1996, which granted defendant's motion for reargument, adhered to its prior order entered February 9, 1996, which granted defendant's motion to vacate the parties' judgment of divorce entered in May of 1995 to the limited extent of directing a hearing on the issue of equitable distribution, unanimously reversed to the extent appealed from, on the law and the facts, with costs, defendant's motion granted in all respects, the judgment of divorce vacated and the matter transferred to Supreme Court, Queens County for further proceedings.

The parties were married in Ecuador in 1963. They have six emancipated children. Neither of the parties speaks or reads English with any degree of facility. Throughout their marriage, plaintiff-husband supported his wife and children. He works as a building porter, and his gross weekly salary as of December 1995 was $538.74. Plaintiff is also a member of a union that provided him with an attorney in this divorce proceeding.

In about 1982, the defendant wife was diagnosed with lupus, and she continues to suffer from the effects of this illness. In September 1992, when defendant was not only suffering from

lupus, but was also recovering from a fall that left her bedridden, plaintiff excluded her from the marital apartment, and brought her to the home of one of their sons.

In December 1992, the defendant filed a petition for spousal support against plaintiff in Queens Family Court, which resulted in an order, entered January 15, 1993, directing plaintiff to pay defendant $150 per week for her lifetime. On at least one occasion, defendant sought court assistance for nonpayment and recovered a judgment of $530, which was ordered to be paid at the rate of $10 per week beginning October 21, 1994.

In March 1994, the plaintiff commenced an action for divorce in Bronx County and, in April, called his wife and informed her that he was going to send her a document that she needed to sign in order to authorize him to begin a divorce proceeding. Plaintiff's attorney sent the defendant a copy of the summons, which indicated that the basis for the divorce was "DRL § 170 (1)", and that the nature of the ancillary relief demanded was "NONE". His attorney also sent the defendant a cover letter explaining that if she did not want to contest the divorce, she could expedite matters by completing and having notarized an enclosed document entitled "Appearance and Acknowledgment of Service of Summons".

The defendant, who did want a divorce since her husband had forced her out of her home, signed the appearance form, had it notarized and returned it to plaintiff's attorney. Plaintiff's counsel then filed all of the documents necessary to place the case on the Supreme Court's uncontested matrimonial calendar, and a judgment of divorce was entered on May 30, 1995.

On or about June 15, 1995, the defendant received a signed copy of the judgment of divorce. Her daughter, with whom she was living, read her the findings of fact and conclusions of law, alerting defendant for the first time that the basis for the divorce was her alleged cruel and inhuman treatment of her husband. She also learned that none of the financial issues regarding their assets or her husband's pension had been resolved. She thereupon sought the assistance of Queens Legal Services, which confirmed to her that the divorce judgment did not contain any provision for equitable distribution or maintenance.

Thereafter, on October 19, 1995, plaintiff filed a petition in Queens Family Court to end his support obligation to the defendant, based upon the fact that the judgment of divorce did not require him to continue spousal support. The petition

stated: "[T]he effect of this divorce terminates any obligation that respondent would have to continue the support of petitioner. No attempt was made by either party to request maintenance, and no maintenance order was made, during the divorce proceedings." On December 7, 1995, the plaintiff's application for termination of spousal support was granted.

On December 22, 1995, defendant moved to vacate the divorce, to transfer the action to Queens County, and for any other relief the court deemed just and proper. Her request for immediate modification of the divorce judgment to provide that plaintiff be ordered to pay her $150 per week in maintenance pending a hearing on the motion was denied. On January 30, 1996, the court vacated the divorce judgment to the limited extent of ordering a hearing on the issue of equitable distribution. Upon reargument, the court, in the order appealed from, adhered to its original determination.

Defendant's arguments that the divorce judgment should be vacated for lack of jurisdiction (Domestic Relations Law § 232) and that it was rendered after "excusable default" lack merit. Domestic Relations Law § 232 deals with divorce judgments rendered upon a defendant's default and this was not the case here. By signing the "Appearance and Acknowledgement of Service of Summons", defendant appeared in the action and waived any defects in service. Defendant's excusable default argument fails for the same reason; the divorce judgment was rendered on consent, not upon default, and therefore CPLR 5015 does not apply (see, Knapek v MV Southwest Cape, 110 AD2d 928, 930).

Nevertheless, defendant persuasively argues that these facts present a case of "extrinsic fraud", i.e., "a fraud practiced in obtaining a judgment such that a party may have been prevented from fully and fairly litigating the matter" (Shaw v Shaw, 97 AD2d 403, citing Tamimi v Tamimi, 38 AD2d 197, and authorities cited therein).

Here, the plaintiff obtained a divorce judgment that was silent as to all financial issues by obtaining his illiterate wife's signature on an appearance and acknowledgement form, and assuring her that he "was seeking a divorce and nothing more". Significantly, in the section labeled ancillary relief requested, the word "NONE" was inserted. The summons stated that the statutory ground for the divorce was Domestic Relations Law § 170 (1), but it did not explain that this section called for a divorce based upon the defendant's alleged cruel and inhuman treatment of her husband.

By ordering a hearing on the issue of equitable distribution,

the trial court implicitly found that the divorce judgment obtained by the plaintiff, which had no provision for a distribution of assets, was flawed. This result, however, fails to address the issue of whether the defendant should also be entitled to maintenance and health or life insurance.

The parties were married for thirty years, they raised six children, and the defendant did not work outside the home throughout the marriage. Given the precarious status of her health, it is unlikely that she will ever become self-supporting. The defendant is suffering from lupus, she has no present savings, no source of income, and she is ineligible for government assistance due to her immigration status. An award of permanent maintenance may be warranted under these circumstances (*see, Fischer v Fischer*, 199 AD2d 1028; *Goldfarb v Goldfarb*, 173 AD2d 355). The defendant may also be entitled to health and life insurance coverage (*see, Feldman v Feldman*, 194 AD2d 207; *Delaney v Delaney*, 114 AD2d 312). We note that if defendant is found to be entitled to a share of plaintiff's future pension, she will not receive it until he retires.

Finally, inasmuch as plaintiff does not dispute the allegation that both parties presently live in Queens and has raised no objections to defendant's request to transfer this action to Queens County, such relief is granted. Concur—Sullivan, J. P., Milonas, Tom, Mazzarelli and Andrias, JJ.