Vincent Gargiulo et al., Respondents, v Murray L. Oppenheim et al., Defendants, and Harry Licht, Appellant. (And a Third-Party Action.)

Second Department, October 11, 1983

APPEARANCES OF COUNSEL

*Shaw, Goldman, Licitra, Levine & Weinberg, P. C. (Richard Eisenberg* of counsel), for appellant.

*Irving L. Schuh (Marshall D. Sweetbaum* of counsel), for respondents.

OPINION OF THE COURT

*Per Curiam.*

We are asked upon this appeal to determine whether the plaintiffs' claim against defendant Licht for the return of the sum of $112,000, predicated upon a claim of unjust enrichment, is barred by reason of the application of the doctrine of claim preclusion (*res judicata*), and, if it is not so barred, whether plaintiffs are entitled to recover upon such claim.

Hendway Associates, Inc. (hereinafter Hendway) and Waverly-M Associates, Inc. (hereinafter Waverly) are New York corporations, the shares of which were initially held as follows: one third by Sam Getz and Gary Joseph, one third by Jeffrey Podell and Bella Weiner and one third by Vincent Gargiulo and Peter Argento, the plaintiffs herein. Hendway and Waverly were organized for the corporate purpose of constructing day-care centers in the City of New York and held the fee titles to the land on which the centers were to be built.

Getz and Joseph also owned and operated a construction contracting concern known as Getz Contractors, Inc., which was employed by Waverly and Hendway to construct two day-care centers, one in Brooklyn and one in Staten Island, which facilities, it was planned, were to be leased to the Department of Social Services of the City of New York. Some time prior to June 20, 1973, the contractor encountered financial difficulty and abandoned construction of the day-care centers. As a result, Waverly and Hendway were faced with building loan mortgage foreclosures. Messrs. Gargiulo and Argento were also affected in that they had contributed their personal funds and had, *inter alia,* pledged their own personal credit for the building loan mortgages and other obligations in connection with the construction of the day-care centers. Additionally, commitments obtained by Waverly and Hendway for permanent mortgage loans, to be made upon completion of the day-care centers, were in jeopardy of being lost by cancellation thereof.

In an attempt to find a way out of their predicament, Getz and Joseph decided to offer Podell and Weiner $50,000 for their shares of stock in the two corporations, Hendway and Waverly, and they told defendant Licht that he could purchase these shares for $112,000 and earn 17% interest upon his investment. There is no evidence that Licht, who paid the $112,000 to Getz and Joseph, had any knowledge of what arrangements Getz and Joseph made to obtain the shares of stock in question. In fact, they paid $85,000 to Podell and Weiner for their one third of the issued and outstanding corporate shares of Waverly and Hendway, and the remaining $27,000 was used to reduce

the indebtedness of Getz Contractors to its creditors. Sam Getz died during the pendency of the litigation which resulted from these and other transactions.

In an apparent effort to save the day-care centers from foreclosure and to salvage their investments, Gargiulo and Argento entered into a written agreement dated June 20, 1973 with Gary Joseph, Waverly and Hendway. The agreement, which acknowledged that Joseph had owned two thirds of the stock of the two executing corporations, and that he had previously sold one third to Licht, required that Joseph return his remaining one third to the corporations and "cause" the shares owned by Licht to also be returned, "with the intent and purpose that Peter [Argento] shall be the sole stockholder in Waverly and Hendway". In return for the Licht stock, the corporations were to pay Licht a total purchase price of $112,000 upon the closing of certain permanent mortgages and the sale of the day-care centers. The payment was guaranteed by Gargiulo and Argento, with certain contingency exceptions which would have permitted them and the corporations to return Licht's stock and pay him nothing. In addition, Joseph was to resign as an officer and director of the corporations. As security for their guarantee of payment to Licht, Gargiulo and Argento pledged certain authorized and issued shares of stock they held in an unrelated corporation called Jamsut Associates, Inc. (hereinafter Jamsut), which were given to Licht's then attorney, Murray Oppenheim, to hold in escrow on condition that the escrowed shares be returned upon payment to Licht of $112,000.

By letters dated January 29, 1974, attorney in fact Oppenheim, on behalf of Licht, advised Gargiulo and Argento that the sum of $112,000 not having been paid, the Jamsut stock would be sold on February 8, 1974 in accordance with the terms of the June 20 agreement. As a result, on or about February 7, 1974, by service of a summons and amended complaint, Gargiulo and Argento commenced the instant action against Licht, Oppenheim and Gary Joseph in Supreme Court, Queens County, by which they originally sought to enjoin the disposition of the Jamsut stock and to have the June 20 agreement

rescinded and declared null and void, asserting in support causes of action based upon claims of violation of public policy, lack of consideration, fraud and duress (on the part of Gary Joseph), violation of the Business Corporation Law and violation of certain restrictions against the transfer of the stock of Hendway and Waverly.

Thereafter, in about May, 1974, Licht commenced his own action in the United States District Court for the Eastern District of New York against Gargiulo, Argento, Jamsut Associates and others. Asserting that the event precedent to payment of $112,000 had occurred on about December 31, 1973, Licht pressed three causes of action; two in a fiduciary capacity on behalf of Jamsut to set aside a conveyance of real property by that corporation and recover $350,000, the alleged value of such property, and a third against Gargiulo and Argento for the payment of $112,000, pursuant to the June 20 agreement. He also sought interest on the debt and counsel fees. By their answer, Gargiulo and Argento alleged affirmative defenses including "failure" of consideration, lack of mutuality of obligation, illegality as a contravention of public policy, fraud and duress. Gargiulo and Argento also interposed the additional affirmative defense of the pendency of a State action and demanded judgment dismissing the complaint.

Meanwhile, in the State action, Gargiulo and Argento moved for a temporary injunction restraining attorney Oppenheim from selling the Jamsut stock to satisfy their obligation pursuant to the June 20 agreement. Special Term's denial of this application was affirmed by this court in November, 1974 (*Gargiulo v Oppenheim*, 46 AD2d 847).

Shortly after the denial of this application, counsel for Licht, Gargiulo and Argento, and attorney Oppenheim, *pro se,* entered into a stipulation dated December 10, 1974. The stipulation provided in part that Gargiulo and Argento were to pay $112,000 to Licht, in return for which, Licht, through Oppenheim, would return the Jamsut stock to Gargiulo and Argento. Also included was a provision that the exchange of money for stock between Licht and Gargiulo and Argento would not "operate to settle, discontinue, abate or otherwise affect" the viability of the two then

pending actions. The terms of the stipulation were carried out. On January 9, 1975, Gargiulo and Argento paid Licht the sum of $112,134.48, comprising the $112,000 purchase price of Licht's share of Waverly and Hendway, and Licht's costs and disbursements on the appeal to this court.

The action in the United States District Court came to trial first before Judge BRUCHHAUSEN in December, 1975 and March, 1976. Licht's two derivative causes of action on behalf of Jamsut were dismissed for reasons not herein relevant, and the issues before the court were restricted by order dated November 13, 1975 to Licht's third claim for relief (interest upon the $112,000 and an application for counsel fees incurred in his derivative claims).

By memorandum and order dated April 19, 1976, Judge BRUCHHAUSEN denied Licht's application for counsel fees, and with respect to his claim for interest, found that the $112,000 was paid and accepted by Licht on the date required by the stipulation and that as that document did not call for the payment of interest, Licht had no right thereto. Accordingly, the judgment entered thereon on April 21, 1976, stated simply that "plaintiff [Licht shall] take nothing of the defendants" and dismissed the complaint.

By amended opinion dated April 28, 1976, Judge BRUCH-HAUSEN sustained defendants' second and fourth through ninth affirmative defenses. Thereafter, in late May, 1976, he filed supplemental findings of fact and conclusions of law, in which the facts were found to be substantially as set forth, *supra*. Additionally, it was found that, while at the time the June 20 agreement was made Gargiulo and Argento possessed only one third of the voting stock in the two corporations, consent of two thirds of the voting stock was required by the lending institutions for the closing of the permanent mortgage loans. To induce Gargiulo and Argento to proceed with the project, and as a necessary concomitant thereof, to sign the June 20 agreement, Judge BRUCHHAUSEN found that Joseph had given them false information as to the cost of completing the centers, indicating that it would be substantially less than it actually was, and that just prior to the execution and delivery of the

agreement, Joseph threatened Gargiulo and Argento that if they and the corporation did not sign, he would walk out without furnishing the needed consents to close the permanent mortgage loans, thereby exposing Gargiulo and Argento to a financial loss in excess of $1,000,000. Additionally, Judge BRUCHHAUSEN found that the two corporations never had any surplus in their treasuries from which to purchase Licht's stock, and thus, there was a lack of consideration to support the June 20 agreement "by said Waverly-M Associates, Inc. and Hendway Associates, Inc".

Based upon his findings, Judge BRUCHHAUSEN dismissed Licht's amended complaint, holding that (1) the June 20 agreement and the guarantees therein, being obtained through fraud and economic duress practiced upon the corporations and Gargiulo and Argento, were null and void, (2) the agreement lacked mutuality of obligation because neither corporation ever possessed a surplus in their treasuries, and could not be enforced by them against Licht, (3) the agreement was unenforceable because it contravened sections 513 and 514 of the Business Corporation Law, and (4) Licht, as third-party beneficiary of the agreement, was subject to the equities therein and bound by its illegality and the fraud and duress by which it was obtained. An amended judgment of the District Court, dated May 24, 1976, again provided that Licht would "take nothing" and dismissed the action. An appeal to the Second Circuit Court of Appeals was dismissed, apparently on account of Licht's default.

Gargiulo and Argento then proceeded with the State action, that herein *sub judice,* amending their complaint to include an additional cause of action for unjust enrichment. Prior to trial, cross motions for summary judgment, predicated upon the judgment in the United States District Court action, were denied by Special Term. In its memorandum, dated October 19, 1978, the court held that although the Federal judgment was *res judicata* as to the invalidity of the June 20 agreement and that issue could thus not be relitigated, the Federal court did not rule upon the validity of the subsequent stipulation. In the opinion of Special Term, plaintiffs had the right to litigate their cause for unjust enrichment, since it arose from the stipulation

and not from the transaction involved in the litigation before the Federal court.

Thereafter, in October and November, 1980, the matter came on for a nonjury trial. The evidence adduced consisted primarily of documentation from the Federal action, Judge BRUCHHAUSEN's findings, some testimony and much colloquy between the court and counsel. At the outset, plaintiffs Gargiulo and Argento abandoned their earlier asserted claims and proceeded only upon that cause of action seeking the return of $112,000, based upon Licht's being unjustly enriched. It was the latter's position at trial, that notwithstanding the fact that the June 20 agreement was void for various reasons, plaintiffs had, nevertheless, obtained a benefit from him (namely, the transfer of his stock in Waverly and Hendway and the powers attendant thereto) and they could not now invoke equity to enforce the return of the purchase price.

By its memorandum decision, dated March 18, 1981, upon which the judgment on appeal was entered, Trial Term found the facts substantially as they have been recounted, determining in the course of its assessment that there was no proof before the trial court or the Federal court either that the Getz-Joseph group had ever owned the Podell-Weiner shares in Hendway and Waverly individually or that there had been any transfer by Getz to Joseph as to the original one-third shares which they jointly owned. Accordingly, at the time of the June 20 agreement, Joseph could not have legally transferred any shares to Licht. Further, Trial Term concluded that there existed an identity of parties and subject matter between the instant action and the prior Federal action, and thus, the Federal judgment was *res judicata* with respect to the same parties in the present action. The court specifically stated that "the sum now sought to be recovered by the plaintiffs from * * * Licht ($112,000) unequivocally arose out of the payment coerced from [them] by defendants based upon the [June 20 agreement] found to be 'illegal' 'void' and against 'public policy'". The court continued:

"Defendant Licht would have the court determine not to entertain this action 'for money had and received' because he claims that such an action, even if based upon 'fraud or

illegality' is nevertheless based upon equitable principles, and plaintiffs have not shown that it is against good conscience for defendant to keep the $112,000 (Schank v Schuchman, 212 NY 352, 358; Moses v Macfarlan, 2 Burr, 1005); defendant further contends that they do not show this, 'where they have consumed what they have received' (Schank v Schuchman, supra, 358).

"There is an ostensible exception to defendant's position and contention, that is, where the money paid exceeds the paid value of that which defendant gave them. Here the defendant gave plaintiffs nothing of value at all, for the District Court fould [sic] and sustained plaintiffs' (defendants therein) 'Fifth Affirmative Defense' that 'There was a failure of consideration by and on the part of the plaintiff (defendant herein) for the Agreement dated June 20, 1973, and also found and sustained plaintiffs' (defendants therein) 'Sixth Affirmative Defense' of 'lack of mutuality' in addition that Court determined that 'defendant (Licht) obtained such Agreement by fraudulent and illegal means' and that it was 'void' as against 'public policy' * * * Such determination, particularly that of being void and 'illegal' for being 'against public policy' lends substance to plaintiffs' position herein that plaintiffs, in fact, as well as in law, received nothing from defendant herein which could lend itself to constituting any form of 'consumption' by them resulting from a lawful, non-void executed contract.

"What is more, plaintiffs could not have received any shares of stock from Licht for he had noe [sic] to give. Never having received title to the shares of Waverly-M and Hendway (see, supra), defendant could not transfer, assign or negotiate any viable agreement with anyone with regard to the disposition thereof."

Trial Term then concluded that the law holds that one may not be enriched as a result of his own fraud or illegality, that Licht received the $112,000 as a result of such acts, and that accordingly, he must return it to plaintiffs, such restitution being required both by reason of the facts adduced at trial and upon the theory of *res judicata*. The remainder of Trial Term's memorandum decision in this matter deals with the disposition of a third-party action not involved in the instant appeal.

■ In our view, notwithstanding the scholarliness of its memorandum decision and the depth of analysis therein, Trial Term erred in several respects, and thus, for the reasons that follow, reversal is warranted.

■ Initially, we note that, contrary to plaintiffs' assertion, this court is not bound by Special Term's refusal to grant summary judgment dismissing the complaint on the ground of *res judicata*. That determination, upon which no order was entered or appealed from, does not constitute the law of the case in this court (see *Gerzof v Gulotta*, 57 AD2d 821, 822, app dsmd 42 NY2d 960; CPLR 5501, subd [a], par 1), for the doctrine of law of the case is inapplicable in an appellate court where the prior determination was made by a court of subordinate jurisdiction (*Di Fresco v Starin*, 81 AD2d 629, 630; see *Klein v Smigel*, 44 AD2d 248, affd 36 NY2d 809).

■ In general, the failure of a party to an action to assert a claim which might have been litigated therein precludes subsequent action on such claim in a future proceeding by application of the doctrine of *res judicata* or claim preclusion (see *Reilly v Reid*, 45 NY2d 24; *Gerzof v Gulotta, supra; Musco v Lupi*, 6 Misc 2d 930). The sum paid to Licht which plaintiffs herein seek to recover was paid as a result of the June 20 agreement. Accordingly, return thereof could have been properly sought in the Federal action by way of a counterclaim for rescission and restitution. Such counterclaim would have addressed the exact same issues therein litigated between the parties and determined by Judge BRUCHHAUSEN. The stipulation between the parties merely constituted a means of avoiding the sale of the Jamsut stock for Licht's benefit and the method by which to preserve each party's right to maintain his own action once the money then due and owing under the June 20 agreement was paid. To construe the stipulation as giving rise to new rights of action between the parties would be to state, that once the exchange of stock for money was made, Licht's right to his remuneration was sealed, since the money was the *quid pro quo* for the Jamsut stock, which the plaintiffs received. This was not the parties' intention. Clearly, all that was effected by the stipulation was an

exchange of value and nothing more. No new rights were created and old rights were preserved. Accordingly, the plaintiffs herein as defendants in the Federal action should have amended their answer after the payment of money to Licht, as they amended their complaint herein, to assert a claim for rescission and restitution. Having failed to do so, they are precluded from maintaining the instant action for return of the $112,000 predicated upon a theory of unjust enrichment, which, as the trial court and Special Term recognized, involves issues actually litigated by the parties before Judge BRUCHHAUSEN.

Significantly, the stipulation was executed at a time prior to the commencement of trial on either action and prior to the amendment of the complaint herein and that document is bereft of specific language evidencing the intent of the parties *inter se* to waive the assertion by either of the affirmative defense of *res judicata.* Accordingly, it must be concluded that the stipulation was meant only to preserve the rights of the parties to seek judicial examination of the June 20 agreement, to have its validity assessed and to obtain an adjudication of their rights in this regard, including the right of Licht to retain the $112,000. We do not read the stipulation as abrogating the *res judicata* effect of the Federal judgment or as endowing the plaintiffs with a second bite of the apple to which, but for the stipulation, they would otherwise not be entitled.

Additionally, we do not agree with Trial Term's factual assessment of the case. Although it is true that Judge BRUCHHAUSEN sustained the plaintiffs' (defendants' therein) affirmative defense in the Federal action of failure of consideration from Licht to them, we are unable to find a single line of support for this conclusion in any of Judge BRUCHHAUSEN's writings, nor does it appear that such issue was considered by him. Though Trial Term found that there was no proof before the Federal court to establish that Gary Joseph ever came into singular ownership of the Podell-Weiner stock or that such stock was ever actually transferred to Licht so that he truly owned something which he could impart to the plaintiffs for the money he received, it is questionable whether Licht's ownership was

in issue or that it was directly addressed by the proof or argument before the Federal court.

There are, however, several factors which we think support the conclusion that Licht did at some point in time possess the stock in question and that he did in fact transfer same to plaintiffs in accordance with the June 20 agreement. The first item we find very persuasive is the existence of the June 20 agreement. While it is true that the agreement was obtained through various misrepresentations and illegalities, Gargiulo and Argento appear to be skilled businessmen who were involved in a million dollar construction project. To assume that they would contract to purchase something as important as the Licht stock when Licht did not in fact own it is folly. Additionally, considering the self-serving behavior of Gary Joseph, with whom Gargiulo and Argento later continued to do business, it is highly doubtful that he would have entered into an agreement which endowed a benefit upon Licht or anyone else which was not required. Licht was not a signatory to the June 20 agreement, but was instead a third-party beneficiary thereto, such status having been conferred upon him by Gary Joseph and, a fortiori, by reason of his ownership of the Podell-Weiner stock. Moreover, during the instant trial before Justice HYMAN, plaintiffs' counsel admitted that Licht had acquired the shares of stock in question and plaintiff Gargiulo testified that he could not have proceeded to complete and sell the day-care centers without the Licht stock and that the day-care center project had been carried to fruition and gave some indication that he had received those shares of stock from Licht.

It is of importance that in their brief to this court, plaintiffs argue not that Licht never possessed the stock, but instead, that it was without value to him. Significantly, Licht's actual ownership of the Podell-Weiner stock is irrelevant to the determination of this matter. The June 20 agreement required that Gary Joseph shall "cause to be transferred the shares of stock sold to Harry Licht" to or for the benefit of plaintiff Argento. Concededly, this stock did not belong to any of the plaintiffs, was required by them to complete their transactions and it was eventually so transferred in order that the day-care center enterprise could be

and was completed. Licht, as third-party beneficiary of the June 20 agreement stood in the position of one who sought to gain a benefit thereby without necessarily having to part with any value in furtherance of receiving such benefit; he concomitantly possessed a right of action to enforce the agreement to obtain the remuneration intended for him, for which Gary Joseph had bargained (see *Seaver v Ransom,* 224 NY 233; *Lawrence v Fox,* 20 NY 268). Thus, assuming that the facts are as they have been found by Trial Term in this regard, and Licht never did come into ownership of the stock in question, this in and of itself does not constitute a ground for granting plaintiffs the relief they now seek.

Accordingly, assuming that we were to hold that the action at bar is not precluded by principles of *res judicata,* we would nevertheless find in Licht's favor. The plaintiffs received the benefit for which they bargained and agreed to pay Licht the $112,000 which they now seek to have returned to them. Having received such a benefit, which was of great value to them, they may not obtain return of the sum paid therefor, notwithstanding the fact that the agreement between the parties giving rise to such exchange has been declared a legal nullity (see *McGrath v Hilding,* 41 NY2d 625, 629; *Paramount Film Distr. Corp. v State of New York,* 30 NY2d 415, 421, cert den 414 US 829; *Schank v Schuchman,* 212 NY 352, 358). As we assess the record before us, we cannot agree with Trial Term's conclusion that Licht did not part with a valuable consideration in exchange for the $112,000 he received from plaintiffs. We have difficulty in ascribing to the proposition implicit in its determination that though plaintiffs' action for return of the $112,000 is not precluded by the doctrine of *res judicata,* that very same doctrine and the prior Federal decision may be employed, so that plaintiffs may be victorious in their action against Licht.

In view of the foregoing, the judgment appealed from should be reversed and the complaint dismissed.

THOMPSON, J. P., BRACKEN, RUBIN and BOYERS, JJ., concur.

Judgment of the Supreme Court, Queens County, entered May 19, 1981, reversed, on the law and the facts, without costs or disbursements, and complaint dismissed.