■ BARBARA ALTMAN, Respondent, v ROGER C. ALTMAN et al., Appellants.—Order, Supreme Court, New York County (Myriam Altman, J.), entered May 17, 1988, which, *inter alia,* denied defendant-appellant Roger Altman's motion for summary judgment dismissing the second amended complaint; and order of aforementioned court, entered October 13, 1988, which, *inter alia,* denied motions of said defendant-appellant

and defendant-appellant Jurate Kazickas to dismiss the third amended complaint, unanimously reversed, on the law, and the action dismissed, without costs.

These consolidated appeals arise from an action brought on or about January 6, 1986 by plaintiff-respondent, Barbara Altman (plaintiff), to set aside, on grounds of fraud, a separation agreement dated December 8, 1980 and a bilateral Dominican divorce decree issued December 15, 1980. Plaintiff and Roger Altman (defendant) were married in 1969 and separated in 1978. There are no issue of the marriage. Since November 13, 1981, defendant has been married to defendant-appellant Jurate Kazickas, with whom he has two small children.

Under the terms of the separation agreement, which plaintiff alleges was procured by defendant through fraudulent misrepresentations regarding his financial circumstances, plaintiff received a lump-sum payment of $85,000, representing one half of the net value of the parties' cash assets, sole occupancy of the two-bedroom, rent-stabilized marital apartment and all its contents, valued at approximately $35,000; a 1977 automobile; payment by defendant of one half of any rent increases for six years; payment of counsel fees; and alimony of approximately $29,200 per year for six years.

At the time that the terms of the separation agreement were being negotiated by counsel for the parties, defendant no longer held a position as partner in the investment banking firm formerly known as Lehman Brothers, where he earned in excess of $150,000 per year, but had assumed a $55,000-per-year position as one of four Assistant Secretaries of the Treasury with the Carter administration. The record establishes, however, that the separation agreement negotiations took into account defendant's intention to return to the private sector by January 1981, and the expectation that his salary would increase to approximately $250,000 when he did so.

The separation agreement was incorporated into the bilateral Dominican divorce decree issued in December 1980, and plaintiff thereafter received and retained the benefits thereof, as well as additional voluntary cash payments made by defendant after his return to Lehman Brothers.

In January 1986, plaintiff commenced this action alleging that defendant had falsely and fraudulently misrepresented and concealed the true nature and extent of his financial worth in order to induce her to enter into the separation

agreement. Specifically, plaintiff claimed that defendant had failed to disclose an agreement he had reached with Lehman Brothers which would increase his assets and future earnings. The record establishes, however, that defendant had not made this agreement prior to the execution of the separation agreement, and that he in fact ·entered into negotiations with several investment banking firms when preparing to return to Wall Street. Thus, the allegation that defendant had negotiated an undisclosed deal for his return to Lehman Brothers is without support in the record. Moreover, the terms of the separation agreement included the following provision: "No representations or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement, and this Agreement is not being executed in reliance upon any representation or warranty not expressly set forth herein. Without limiting the foregoing, *no representations or warranties have been made by the Husband to the Wife, or by anyone else to the Wife, with respect to the past, present or future income or assets of the Husband,* and without limiting the foregoing, no representations or warranties have been made by the Wife to the Husband, or by anyone else to the Husband, with respect to the past, present or future income or assets of the Wife." (Emphasis added.)

The appeal before us challenges orders of the IAS court denying motions to dismiss by defendant and his present wife, Jurate Kazickas. We reverse and dismiss the action as to each defendant.

Under the doctrine of comity, full faith and credit will be accorded to a judgment of a foreign country unless it is established that the judgment is violative of a strong public policy or has been procured by extrinsic, as opposed to intrinsic, fraud. *(Greschler v Greschler,* 51 NY2d 368, 376; *Tamimi v Tamimi,* 38 AD2d 197.) The distinction between extrinsic and intrinsic fraud is defined as follows:

" 'Intrinsic fraud is fraud which goes to the existence of a cause of action, and is held to be no defense. The American courts hold that a foreign judgment cannot be attacked on the ground that it was procured by false testimony * * *.

" 'The fraud which will be available to a [party] in his attack upon a foreign judgment, in the main, is fraud which has deprived him of the opportunity to make a full and fair defense. There are many varieties of such fraud. *Thus, where the defendant failed to present his case because the plaintiff agreed to drop the suit or to compromise the case or notified*

*the defendant that the proceeding had been dismissed, or by any other agreement or promise lulled the defendant into a false security, the judgment may be attacked by the defendant' ". (Tamimi v Tamimi, supra,* at 203-204 [quoting 2 Beale, Conflict of Laws § 440.4].)

Thus, extrinsic fraud " 'must be in some matter other than the issue in controversy in the action' ". *(Chenu v Board of Trustees of Police Pension Fund,* 12 AD2d 422, 424 [quoting *Crouse v McVickar,* 207 NY 213, 218], *affd* 11 NY2d 688, *mot to amend remittitur granted* 11 NY2d 765, *cert denied* 370 US 910.)

In the case at bar, plaintiff has offered no proof of extrinsic fraud. Rather, her claims are of fraud in the negotiation of the separation agreement, and therefore involve " 'the issue in controversy' " *(Chenu v Board of Trustees, supra,* at 424) and not a deprivation of the opportunity to make a full and fair defense. *(See, Tamimi v Tamimi, supra.)* Here, as in *Carbone v Alverio* (89 AD2d 553, 554), where the court rejected a challenge to rescind a separation agreement and modify the provisions of the divorce decree, the "alleged misrepresentations of * * * financial status are 'in essence no different from any other type of perjury committed in the course of litigation', and thus constitute intrinsic fraud". For these reasons, we conclude that plaintiff's claim of alleged fraud in the negotiation of the separation agreement is a legally insufficient basis, irrespective of its merit or lack thereof, to set aside, or deny comity to, the Dominican judgment of divorce.

We further conclude that this case does not present one of those "rare instance[s]" in which the public policy exception to the doctrine of comity must be invoked because enforcement of the judgment "would result in the recognition of a 'transaction which is inherently vicious, wicked or immoral, and shocking to the *prevailing* moral sense' ". *(Greschler v Greschler, supra,* at 377 [quoting *Intercontinental Hotels Corp. v Golden,* 15 NY2d 9, 13].) The separation agreement at issue is neither facially irregular nor unconscionable, and its terms "do not rise to the level of gross inequity that might implicate New York's public policy." *(McFarland v McFarland,* 70 NY2d 916, 917.) In this context, we note that the record, including plaintiff's own testimony, fails to support the claim that plaintiff did not freely select the attorney who negotiated the terms of the separation agreement on her behalf.

Plaintiff testified that she chose her attorney from a list of "somewhere between five and ten" lawyers provided for her

by defendant and, further, gave reasons for her choice, including that the lawyer was "first on the list", that she had looked up his name to determine his credentials and whether he was a matrimonial lawyer, and that he, like plaintiff, had attended Columbia University. The attorney in question also gave evidence on this issue and, referring to contemporaneous notes on his first consultation with plaintiff, testified that she had told him that a partner in a major law firm and an accountant, neither of whom are alleged to have been partial to defendant, referred her to him. Thus, plaintiff's claim that her attorney was selected by the defendant must be rejected, as neither evidenced by the separation agreement, which was fair on its face, nor otherwise supported in the record. *(Barry v Barry,* 100 AD2d 920, *affd* 64 NY2d 627.)

Finally, we note that plaintiff has accepted all of the benefits of the agreement and should therefore be precluded, under the doctrine of ratification, from challenging its validity. *(Beutel v Beutel,* 55 NY2d 957; *Stoerchle v Stoerchle,* 101 AD2d 831.)

For the foregoing reasons, the orders of the IAS court, entered May 17, 1988 and October 13, 1988, are reversed and the action is dismissed. In light of this determination, it is unnecessary for us to address the remaining points raised in these consolidated appeals. Concur—Kupferman, J. P., Kassal, Rosenberger and Wallach, JJ.