In re Angela Maria **SLATER**, Debtor.

No. CV 96–4505 (ADS).

United States District Court, E.D. New York.

Sept. 21, 1996.

Wotman & Associates, P.L.L.C., New York City by Daniel Wotman, for Debtor.

Cullen & Dykman, Garden City, NY by Antonia M. Donohue and Cruser & Hills, Riverhead, NY by Edgar Hills, for Green-Point Bank.

Marianne DeRosa, Chapter 13 Trustee, Mineola, NY.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

Presently before the Court is the motion of the debtor-appellant, Angela Maria Slater (the "Debtor" or "Slater"), for a stay pending appeal of the August 1, 1996 decision of United States Bankruptcy Judge Melanie Cyganowski granting the appellee Green-Point Bank (the "Bank" or "GreenPoint") relief from the automatic stay in order to evict Slater from the real property at issue. *See In re Slater,* Case No. 095–70848–511 (Bankr.E.D.N.Y. Aug. 1, 1996).

I. *Background*

Initially, consideration of the factual and litigation history of this case reveals a tangle of state court and bankruptcy court proceedings which are complex and confusing. To make sense of the background of this stay application, the Court must engage in a careful review of each step taken by the litigants.

Angela Maria Slater resides at 56 Dawn Drive in Shirley, New York where she has lived for approximately 20 years. Green-Point was the holder of a mortgage in the amount of $60,000 on the property executed by Shelley Friedman on September 26, 1985. Friedman obtained title to the property by a deed executed by Slater dated July 24, 1985

and a document known as a correction deed dated October 8, 1985. Subsequently, Friedman defaulted on the mortgage and GreenPoint obtained title as the result of a foreclosure judgment entered in New York State Supreme Court, Suffolk County on January 28, 1992, against Friedman and Slater. *See GreenPoint Sav. Bank v. Friedman,* Index No. 03691/88 (Sup.Ct. Suffolk Cty. Jan. 28, 1992). As part of this state court lawsuit, the Debtor interposed an answer and cross-claim, as well as a separate lawsuit against the defendant Friedman alleging that she, and not Friedman was the true owner of the property.

At the trial in Supreme Court, Suffolk County, Slater made two arguments: first, that she never executed the July 24, 1985 deed to Friedman, and second, that Friedman's name was fraudulently inserted as grantee. According to the Debtor, she intended to transfer the property to her brother Vincent Carnevale, Friedman's boyfriend, to be held in trust for Slater's daughter.

The trial court rejected both contentions as against the weight of the evidence and on March 13, 1992 dismissed the Debtor's answer containing the cross-claim and the separate lawsuit by her on the merits, granting judgment in favor of GreenPoint. There was no appeal from the judgment. GreenPoint then purchased the property at a subsequent foreclosure sale and the Referee executed a deed in favor of the Bank on November 12, 1992.

On July 16, 1993, the Debtor filed her first voluntary petition for relief which was pursuant to Chapter 7 of the Bankruptcy Code. *See In re Slater,* Case No. 093–72302–511. She was relieved of her dischargeable debts on November 12, 1993 and the case was closed on December 8, 1993.

On April 28, 1994, the Debtor filed a second voluntary petition this time under Chapter 13 of the Bankruptcy Code. *In re Slater,* 094–71002–511. On June 1, 1994, GreenPoint moved for relief from the automatic stay in order to evict Slater based on the title gained in the prior foreclosure judgment. The Debtor opposed the motion arguing that the Bank did not have proper title because Slater's brother had forged her name on the underlying deed. On July 18, 1994, the Bankruptcy Court granted the Bank's motion for relief from the automatic stay on res judicata grounds. In so doing, the Bankruptcy Court granted Slater 45 days to contest the foreclosure judgment in the state court. Slater did not appeal from the Bankruptcy Judge's decision and that case was closed on September 16, 1994.

On November 14, 1994 Slater was served with a 72 hour notice of eviction. Two days later, on November 16, 1994, she moved by order to show cause in the state court, pursuant to New York CPLR § 5015 to vacate the foreclosure judgment; for a declaration that she was the owner of the property; and to obtain restitution. *GreenPoint Sav. Bank v. Friedman,* Index No. 03691/88 (Sup.Ct. Suffolk Cty). In support of her motion she described how the Friedman deed was forged, how her prior attorney failed to prepare her properly for the state court trial, and proposed evidence in support of her allegations by way of a handwriting expert. On February 25, 1995, Slater's motion was denied. The state court reasoned that because these issues were "identical" to those previously raised before the trial court in 1992, and in view of the fact that the Debtor failed to appeal, relitigation of the matter was barred under the doctrine of res judicata. Accordingly, the state court stay was vacated and the Bank was permitted to proceed with the eviction.

The present action was then commenced by the filing of a third voluntary petition, again under chapter 13 of the Bankruptcy Code, on April 3, 1995. GreenPoint again filed a motion for relief from the automatic stay in order to take possession of the property based on the foreclosure judgment. The Debtor opposed the motion essentially making three arguments; two of which were made in the Bankruptcy Court and one raised for the first time in this Court. Initially, Slater argued that the state court foreclosure judgment is invalid because title to the property was transferred as the result of fraud and duress perpetrated by the Debtor's brother, his girlfriend, and her trial attorneys. As a result, she reasoned that the related mortgage given to Friedman by the

Bank is also invalid. In support of this claim, Slater contends that she was forced to transfer the deed to the property while her brother held a gun to her head and that the signature on the deed to Friedman was a forgery. Further, she contends that although Slater's trial counsel knew of these incidents, they failed to raise these issues in the state court.

Second, the Debtor contended that the foreclosure judgment was procured by fraud both as a result of Friedman's unlawful acquisition of title, and because Slater was prevented from presenting her case at trial because of her brother's repeated physical assaults and death threats should she testify truthfully. At prior oral argument before this Court, the Debtor's counsel stated that Slater's brother went so far as to brandish a gun in court during the prior proceedings.

The Bankruptcy Court rejected these two contentions and granted GreenPoint's motion to lift the stay, holding that the state court foreclosure judgment was not subject to collateral attack and therefore was entitled to full faith and credit. In rejecting the Debtor's two arguments discussed above, Judge Cyganowski's stated that:

> [the] forgery of [Slater's] signature does not go to fraud in procuring the judgment; it goes to fraud in procuring the Property. To some extent, the debtor recognized this deficiency, and she therefore raises the specter of coercion during the trial. The coercion she complains of however, was allegedly practiced by her brother, and not GreenPoint, the adverse party and beneficiary of the judgment.

*Slater* at 16. Accordingly, Judge Cyganowski held that the state court judgment is insulated from collateral attack and GreenPoint's motion for relief from the stay was granted.

Slater's third contention was raised for the first time by letter memorandum to this Court dated September 18, 1996. According to the Debtor, GreenPoint was not an innocent party to the frauds described above. Slater states that given the surrounding circumstances, GreenPoint should have conducted a further investigation as to how Friedman obtained title from Slater. In support of this position, Slater alleges that GreenPoint had already rejected a mortgage application by Carnevale in which he had presented the Slater deed to the Bank. GreenPoint was also aware that Carnevale transferred the deed to Friedman who had a good credit rating so that she could obtain the mortgage. At the closing, according to Slater, the mortgage proceeds were paid to Carnevale, not Friedman. Further, the Bank's title company required a correction deed be signed in order to record the mortgage. According to Slater, the new deed had the exact same signature and notarization on it as the first deed. In addition, she contends that no New York State Real Property Transfer Gains Tax Affidavit was filed with the correction deed. Rather, the Gains Tax Affidavit was filed more than one year after the mortgage closing. Slater also contends that her signature on the affidavit bore no resemblance to her actual signature, and an investigation would have shown that it was a forgery. Moreover, at the time of the foreclosure proceedings, Slater advised the Bank that her signatures had been forged on the deeds, and yet GreenPoint did not investigate the matter.

## II. *Discussion*

As stated above, presently before the Court is the Debtor's motion for a stay pending appeal of the Bankruptcy Court's decision granting the Bank's motion for relief from the Debtor's automatic stay, so that the Bank could proceed to evict Slater. Fed. R.Bankr.P. 8005 provides for the issuance of a stay pending appeal as follows:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, ... or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance.... A motion for such relief ... may be made to the district court ... [and] the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court ... may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court.

When considering a motion for a stay, courts generally consider the following four factors: (1) the irreparable harm to the movant if the stay is denied; (2) the likelihood that the party seeking the stay will succeed on the merits of the appeal or a serious question going to the merits and a tipping of the equities in favor of the movant; (3) whether there will be substantial harm to other parties if the stay is granted; and (4) the harm to the public interest. *See In re Sphere Holding Corp.,* 162 B.R. 639, 642 (E.D.N.Y.1994); *In re Issa Corp.,* 142 B.R. 75, 77 (Bankr.S.D.N.Y.1992); *In re Myerson & Kuhn,* 121 B.R. 145, 153 (Bankr.S.D.N.Y. 1990); *In re Charles & Lillian Brown's Hotel, Inc.,* 93 B.R. 49, 53 (Bankr.S.D.N.Y.1988); *In re Cretella,* 47 B.R. 382, 383 (E.D.N.Y. 1984). The case law suggests that all four criteria must be satisfied for a stay to be issued. *Issa Corp.,* 142 B.R. at 77; *Charles & Lillian Brown's Hotel,* 93 B.R. at 53–54.

### 1. *Irreparable harm*

The parties do not seriously deny that Slater will suffer irreparable harm if she is evicted from her home. The Debtor has resided on the property for twenty years. If she is evicted and the premises are resold by the Bank, she will have little if any hope of recovering the property. Accordingly, the Court finds that Slater has fulfilled the requirement of irreparable harm. *See, e.g., Issa Corp.,* 142 B.R. at 78 (recognizing that where debtor-restauranteur stands to be evicted from the premises, and thereby lose its restaurant, the debtor will "[i]ndisputably" suffer irreparable harm).

### 2. *Likelihood of success on the merits*

The more difficult question is whether Slater has established a likelihood of success on the merits or a serious question going to the merits. As stated above, the Debtor argues that the state court judgment of foreclosure should be set aside, and raises three issues on this appeal: (1) Carnevale and Friedman obtained Slater's signature on the deeds through fraud; (2) Carnevale and Friedman prevented Slater from testifying at the state court trial by physically assaulting her and repeatedly threatening her life; and (3) the

Bank breached its duty to investigate the validity of the deed and other surrounding circumstances before making the mortgage loan to Friedman.

With respect to the first two arguments, Slater contends that the Bankruptcy Court wrongly applied the doctrine of full faith and credit in granting GreenPoint's motion.

Article IV, Section 1 of the United States Constitution provides that:

> Full faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Const. Art. IV section 1. Similarly, pursuant to 28 U.S.C. § 1738:

> [J]udicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken.

Section 1738 " 'require[s] all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.' " *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988), quoting, *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Accordingly, a bankruptcy court may look behind a state court judgment only if that judgment was procured by fraud or collusion, or where the rendering court lacked jurisdiction. *Kelleran,* 825 F.2d at 694; *see also Stephens Fuel Co., Inc. v. Bay Parkway Nat'l Bank of Brooklyn,* 10 F.Supp. 395, 397 (E.D.N.Y. 1935); *In re Morton,* 43 B.R. 215, 218 (Bankr.E.D.N.Y.1984); *Bell v. Town Bd. of Pawling,* 146 A.D.2d 729, 537 N.Y.S.2d 214, 215 (2d Dep't 1989); *J.J. Miller Constr. Co. v. Berlanti Constr. Co., Inc.,* 197 N.Y.S.2d 818 (Sup.Ct. Westchester Cty.1960).

However, merely recognizing that a fraudulently procured judgment may be attacked collaterally does not end the inquiry. New York courts have distinguished between

"extrinsic" fraud, which is subject to such attack, and "intrinsic" fraud, which is not. *See Altman v. Altman,* 150 A.D.2d 304, 542 N.Y.S.2d 7, 9 (1st Dep't 1989); *Tamimi v. Tamimi,* 38 A.D.2d 197, 203–04, 328 N.Y.S.2d 477, 483–84 (2d Dep't 1972). As the court stated in *Altman:*

> [F]ull faith and credit will be accorded to a judgment . . . unless it is established that the judgment is against strong public policy or has been procured by extrinsic, as opposed to intrinsic, fraud. *Greschler v. Greschler,* 51 N.Y.2d 368, 376, 434 N.Y.S.2d 194, 414 N.E.2d 694; *Tamimi v. Tamimi,* 38 A.D.2d 197, 328 N.Y.S.2d 477. The distinction between extrinsic and intrinsic fraud in defined as follows:
>
> > Intrinsic fraud is fraud which goes to the existence of a cause of action, and is held to be no defense. The American courts hold that a foreign [or state court] judgment cannot be attacked on the ground that it was procured by false testimony * * *. The fraud which will be available to a [party] in his attack upon a [prior] judgment, in the main, is fraud which has deprived him of the opportunity to make a full and fair defense. . . .
>
> *Tamimi v. Tamimi, supra,* 38 A.D.2d at 203–204, 328 N.Y.S.2d 477. . . . Thus, extrinsic fraud "must be in some matter other than the issue in controversy in the action." *Chenu v. Board of Trustees,* 12 A.D.2d 422, 424, 212 N.Y.S.2d 818, . . . *aff'd,* 11 N.Y.2d 688, 225 N.Y.S.2d 760. . . .

*Altman,* 542 N.Y.S.2d at 9. Accordingly, extrinsic fraud goes to the litigants opportunity to have a full and fair hearing. *See Altman,* 542 N.Y.S.2d at 9. Intrinsic fraud goes to the underlying issue in the original lawsuit. *Id.*

■ Applying this distinction, the Court rejects Slater's first argument that the state court judgment should be set aside because her signature on the deed was fraudulently obtained. These allegations go directly to the merits of the state court trial and as such constitute intrinsic fraud which this Court may not reevaluate. *See Altman,* 542 N.Y.S.2d at 9; *Tamimi,* 328 N.Y.S.2d at 483–84. Moreover, in granting the foreclosure judgment in favor of the Bank, the trial court expressly rejected the notion that Slater's signature was a forgery. Accordingly, the Court finds that this determination by the state court is entitled to full faith and credit in this Court.

■ Nevertheless the Court also finds that the Debtor's allegations that her brother physically assaulted her and threatened her life before and during the trial, as set forth in her second contention, does constitute extrinsic fraud sufficient to attack the state court judgment. *See, e.g., In re Kittinger's Estate,* 199 Misc. 377, 101 N.Y.S.2d 844, 846–47 (Surr.Ct.N.Y.Cty.1950) (recognizing that death threats may constitute the type of duress, coercion or fraud necessary to attack prior proceedings).

Having determined that this conduct, if true would permit a collateral attack on the state court judgment, the Court now considers which parties may be held responsible for this activity. According to Slater the state court judgment in favor of the Bank is not entitled to any deference because of the unlawful conduct perpetrated by her brother and his girlfriend during the state court proceeding. Accordingly, this Court must determine whether a fraud perpetrated by third parties, in this case Carnevale and Friedman, which leads to an adverse judgment is subject to the same exceptions to the full faith and credit doctrine as a fraud committed by the adverse party itself, here the GreenPoint Bank.

■ In answering this question in the negative, the Court finds authority in a number of sources. As the Bankruptcy Court noted, New York law permits a prior judgment to be collaterally attacked by motion pursuant to CPLR § 5015. Section 5015 provides that "[t]he court which rendered a judgment or order may relieve a party from it . . . upon the ground of . . . fraud, misrepresentation, or other conduct of an *adverse party.*" N.Y.Civ.Prac.L. & R. § 5015(a)(3) (emphasis added). Section 5015 is modeled on Fed.R.Civ.P. 60(b)(3) which also provides for relief from a final judgment where the judgment was procured by fraud, misrepresentation or other misconduct by an *"adverse*

*party."* *See* N.Y.Civ.Prac.L. & R. § 5015, Prac.Comm. C5015:8.

As stated above, the state court has already denied Slater's section 5015 motion on res judicata grounds. However, even if the Court assumes that this motion was never made, a collateral attack under both section 5015, and its template, Fed.R.Civ.P. 60(b)(3), require that the fraud be committed by the adverse party, as opposed to a third party.

■ Further, apart from CPLR § 5015, the New York state courts have recognized that "[t]he fraud *of a party* " may render a judgment subject to collateral attack. *Application of Magaraci,* 14 A.D.2d 453, 215 N.Y.S.2d 546 (3d Dep't 1961) (emphasis added); *Tamimi,* 328 N.Y.S.2d at 479–80 ("fraud or deception practised [on a litigant] by his *opponent* ... are reasons for which a new suit may be sustained to set aside and annul the former judgment") (emphasis added); *see also Industrial Development Bank v. Bier,* 149 Misc.2d 797, 565 N.Y.S.2d 980, 982 (Sup. Ct.N.Y.Cty.1991), *aff'd,* 182 A.D.2d 570, 582 N.Y.S.2d 429 (1st Dep't 1992) (where the defendant is deceived by plaintiff's misrepresentations, the defendant may attack the resulting judgment); *cf. In re Adwar,* 55 B.R. 111, 115–16 (Bankr.E.D.N.Y.1985) (denying summary judgment motion to dismiss collateral attack on foreclosure judgment where debtor alleged fraud perpetrated by an adverse party). Accordingly, the New York case law, similar to the CPLR, supports the conclusion that fraudulently procured judgments are subject to collateral attack only when the fraud is committed by the adverse party, in this case the Bank.

An analysis of secondary sources further supports this determination. For example, the Restatement (Second) of Judgments provides for collateral attack of judgments "[p]rocured by [c]orruption, [d]uress, or [f]raud." Restatement (Second) of Judgments § 70 (1980). Section 70 of the Restatement provides that a judgment may be avoided "if the judgment: (a) [r]esulted from corruption of or duress upon the court or the attorney for the party against whom the judgment was rendered, or duress upon that party, or (b) [w]as based on a claim that the party obtaining the judgment knew to be

fraudulent." Taking the second provision first, the Restatement expressly requires that the prevailing party knew that the prior judgment was fraudulently obtained. Further, although the first provision does not explicitly state that the corruption or duress be perpetrated by the adverse party, the commentary discusses the "powerful incentive" that a "litigant" would have to obtain a judgment through "duress or deception" if such judgments could not be set aside. Restatement (Second) of Judgments § 70, cmt. (a), (b) (1980); *see also* 9 Carmody–Wait, Cyclopedia of New York Practice 2d § 63:533 at 325 (stating that the judgment of a sister state may be set aside where that judgment was the product of such coercion or duress that "th[ose] proceedings were in legal effect the act of the party who practiced the duress"). Accordingly, the Court holds as a matter of law that in order to collaterally attack a fraudulently procured judgment under New York law, the fraud alleged must have been perpetrated by the adverse party who succeeded in the prior proceedings, in this case the GreenPoint Bank.

The cases cited by Slater at oral argument do not point to a different conclusion. For example, *Browning v. Navarro,* 826 F.2d 335 (5th Cir.1987) addressed a fraud perpetrated by a party's attorney. *I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541 (11th Cir.1986), does not involve a fraudulent procurement of an prior judgment or the effect of conduct by a non party.

Finally, the Court must consider whether GreenPoint's complicity in the fraud, as alleged by Slater, namely its failure to fully investigate the surrounding circumstances before issuing the mortgage, would permit this Court to set aside the state court judgment or even raise a serious question going to the merits. However, before reviewing the substance of these allegations, the doctrine of res judicata must first be considered.

■ A federal court will apply state law preclusion doctrines when determining the binding effect of a state court decision in a federal case. *Migra v. Board of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Under New York law:

[t]he doctrine of res judicata will bar subsequent actions which seek to relitigate those matters for which a valid final judgment had already been entered in a prior action (*see Chisholm–Ryder Co. v. Sommer & Sommer*, 78 A.D.2d 143, 434 N.Y.S.2d 70). It will also bar a subsequent action when the claims interposed could have and should have been litigated in that former action (*Gargiulo v. Oppenheim*, 95 A.D.2d 484, 467 N.Y.S.2d 276). In determining the reach of res judicata a transactional analysis is to be employed (*O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158). By this approach, once a cause of action arising out of a "factual grouping" and "transaction" has been finally determined, all other claims arising out of the same "factual grouping" or "transaction" are also barred (*Smith v. Russell Sage College*, 54 N.Y.2d 185, 192, 445 N.Y.S.2d 68, 429 N.E.2d 746).

*Romano v. Astoria Federal Sav. & Loan Ass'n*, 111 A.D.2d 751, 490 N.Y.S.2d 244, 245 (2d Dep't 1985).

 Applying this standard, the Court now finds that any allegations regarding GreenPoint's conduct in allegedly failing to investigate the circumstances, which would affect the Bank's rights with respect to the mortgage, are barred by the doctrine of res judicata. In the state court action, a foreclosure judgment was entered in favor of GreenPoint. Any underlying unlawful conduct on the Bank's part constitutes part of the same "transaction", and therefore should have been raised at that time. Whether the issue was actually litigated is of no moment. Slater is now bound by the outcome of those proceedings. Further, as stated above, the Debtor does not allege that GreenPoint perpetrated any fraud during the state court proceedings which would warrant the upsetting of that judgment in this Court. Simply put, Slater's remedies, if any, are against the alleged perpetrators of the frauds, namely Carnevale, her brother, Friedman, his girlfriend, and possibly her state court trial attorneys, not the GreenPoint Bank. Accordingly, the Debtor has failed to demonstrate a either a likelihood of success on the merits of her appeal, or even a serious question going to the merits of such an appeal, and her motion for a stay pending appeal is denied.

### III. *Conclusion*

After reviewing the parties' submissions and hearing oral argument on September 13, 1996 and September 20, 1996, it is hereby

ORDERED, that the Debtor's motion for a stay pending appeal of the August 1, 1996 decision of the Bankruptcy Court is denied; it is further

ORDERED, that, there being no objections by any of the parties, the adversary proceeding *Slater v. Carnevale*, 095–7170–511 before the United States Bankruptcy Court for the Eastern District of New York is hereby withdrawn to this Court pursuant to 28 U.S.C. § 157(d); and it is further

ORDERED, that upon stipulation of the parties, the adversary proceeding inasmuch as it alleges claims against the GreenPoint Bank is hereby withdrawn.

SO ORDERED.