OPINION OF THE COURT
Richard A. Dollinger, J.
It is a classic harvesttime conundrum and invokes an age-old question: when does a defaulting parent get a second bite at the “child support” apple? The answer requires the court to peel away the skin and explore the core of the interaction between the Civil Practice Law and Rules and the Domestic Relations Law.
*601 A defendant husband in a divorce action defaults after being served. He never answers or participates in the divorce. The plaintiff wife, through her counsel, calculates child support, using a suspected, but actually-unknown income for the defaulting parent. The court signs the default divorce. The husband does not pay the ordered support and when the wife moves to collect the arrears, he moves to vacate the judgment of divorce, arguing that he was not advised of the provisions of the Child Support Standards Act (CSSA), as innumerable court decisions seemingly require. (Domestic Relations Law § 240 [1-b] [h]; see e.g. Young v Young, 142 AD3d 612 [2d Dept 2016]; Warnecke v Warnecke, 12 AD3d 502 [2d Dept 2004].) But if a parent defaults, and never participates in the divorce or the calculation of child support, does the general rule—no enforcement of child support awards unless the parents are aware of the CSSA—apply and require this court to vacate the support order?
The parties were divorced in September 2015. The husband was served with a summons with notice and failed to file an answer. Faced with no participation from the husband, the wife, and her then counsel, submitted child support calculations as part of the judgment. Because the husband had failed to participate or even file a statement of net worth, wife’s counsel projected the child support obligation which was included in the judgment, which was filed on September 30, 2015. The husband’s income, according to the wife’s testimonial affidavit, was unknown at the time of the divorce because he had failed to appear. The wife’s attorney’s calculation of support was based on the husband’s previous employment as a soldier in the United States Army and, based on figures from an Army pay chart, was estimated at $37,128 per year. In the testimonial affidavit, the wife’s attorney calculated both parents’ incomes, allocated to each their respective share of the statutory child support, and the husband’s share was $8,619.58 yearly or $165.76 per week. In August 2016, the wife brought a proceeding to enforce the decree and collect more than $10,000 in unpaid child support. The wife also sought to change custody from joint to sole custody, alleging that the husband was not taking advantage of the visitation/parenting time set forth in the judgment. The husband vehemently denied these allegations, sought a change of custody, a new parenting schedule, and requested a hearing.
Before addressing the substance of this application, the court notes the black-letter law in New York. Domestic Relations *602 Law § 240 (1-b) (h) requires a stipulation of settlement providing for a parent’s obligation to pay basic child support to contain recitals that the parties were advised of the CSSA and “that the basic child support obligation provided for therein would presumptively result in the correct amount of child support to be awarded.” Child support provisions in stipulations or agreements that do not contain these recitals are invalid and unenforceable. (Young v Young, 142 AD3d 612 [2d Dept 2016]; Ntourmas v Ntourmas, 126 AD3d 957, 958 [2d Dept 2015].)
In considering this application, the court notes that unlike the myriad of cases cited by husband’s counsel to support vacating the child support award, this case was a default judgment—the husband never appeared in the action. The court that signed the decree found that the husband had been served with the summons with notice and never answered. Therefore, the general rule, articulated above, does not apply by its express terms to this application—it only applies to “stipulations and agreements.” This court can find no instance in which the rule has been applied to default divorce judgments. The reason seems patently obvious: if a party fails to appear in a divorce action, the plaintiff cannot give the payor notice of the CSSA standards. Therefore, the rule does not apply in this instance.
As a consequence, this court turns to the general principles of CPLR 5015 (a) which provides that a motion to vacate an order upon the basis of excusable default must be filed within one year of service of the decree, or if the party has entered the judgment order within one year after such entry. The statute, as interpreted by the New York courts, also requires the party seeking to vacate the order to provide both a reasonable excuse for the default, and a potential meritorious defense. (Ashley v Ashley, 139 AD3d 650 [2d Dept 2016]; Matter of Martin v Cooper, 96 AD3d 849, 850 [2d Dept 2012]; Matter of Gustave-Francois v Francois, 88 AD3d 881 [2d Dept 2011]; Matter of Proctor-Shields v Shields, 74 AD3d 1347 [2d Dept 2010].)
The first clause of CPLR 5015 (a) (1) applies because the wife entered the judgment and thus, the husband can move to vacate the judgment within one year of the service upon him of the judgment with notice of entry. In reviewing the chronology in this matter, the judgment of divorce was entered in the Monroe County Clerk’s Office on September 30, 2015. The judgment contains a stamp entitled “received . . . Monroe County *603 Clerk” on that date. In this court’s view, that stamped notation constitutes “written notice of . . . entry” under CPLR 5015 (a) (1). The husband provided the court with an affidavit of service—that he was served the judgment of divorce on October 29, 2015. The motion to vacate the child support provisions of the judgment was filed on October 12, 2016, less than one year after the judgment was entered. The husband’s application meets the one-year requirement under CPLR 5015 (a).
The husband asserts that noncompliance with the publication requirements of the CSSA constitutes a meritorious defense to the underlying action in which he defaulted. (Federal Natl. Mtge. Assn. v Zapata, 143 AD3d 857 [2d Dept 2016].) This court notes that the requirement of a “meritorious defense” is not defined by CPLR 5015. In fact, the text of the rule never mentions “meritorious defense.” The requirement is a gloss added to the rule by the courts, who appear to borrow it from CPLR 317, which allows a person who has never received a summons time to enter a defense if they have a “meritorious defense.” The Court of Appeals appeared to conflate the two CPLR sections in Vogel v Asgrow Mandeville Co. (55 NY2d 675 [1981]), when it implied that a “meritorious defense” was required under both CPLR sections. By 1986, the courts had appended the “meritorious defense” requirement to section 5015 (a) (1) despite no mention of it in the text of the rule. (Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co., 67 NY2d 138 [1986].) This digression into the text of section 5015 (a) is pertinent here because, in this court’s view, the requirement for a “meritorious defense” and the underlying action to which it relates is a judicial construct, and not a legislative command, and thus this requirement of CPLR 5015 (a) is the most susceptible to judicial discretion.
In this case, the judgment or order from which relief is sought is the judgment of divorce. In seeking to vacate the judgment, the husband argues that the failure to comply with the CSSA requirements in the decree is a “meritorious defense” to the divorce action. In the context of this case, the lack of compliance with the CSSA disclosure requirements is not a “defense” to the judgment of divorce. This divorce was procured under section 170 (7) of the Domestic Relations Law which provides that a declaration of irretrievable breakdown of the marriage establishes the claim for divorce. (Palermo v Palermo, 100 AD3d 1453 [4th Dept 2012].) The lack of compliance with CSSA is not a defense to the complaint for a judgment of *604 divorce, which is, technically, the action that the husband seeks to vacate. But, as noted above, this requirement for a meritorious defense is the most elastic of the concepts required by CPLR 5015. In considering the unique nature of this case, this court, in an exercise of discretion, concedes that while not a defense to the divorce action, the lack of compliance with the CSSA requirements qualifies as a meritorious defense to the enforcement action brought by the wife in this instance. (CPLR 5015 [a].)
Finally, this court must find that there is “a reasonable excuse” for the father’s failure to appear in the divorce action. CPLR 5015 (a) (1) uses the words “excusable default,” which the New York courts have judged to be equivalent with a “reasonable excuse.” (Merrimack Mut. Fire Ins. Co. v Long Is. Power Auth., 143 AD3d 953, 955 [2d Dept, Oct. 26, 2016]; JPMC Specialty Mtge. LLC v Espada, 143 AD3d 611 [1st Dept, Oct. 25, 2016].) The husband admits that he was served with the divorce action and, as he states, he “put his head in the sand.” He justifies that lack of participation after receiving the summons with notice because he is a veteran who served in the Army and was deployed in Afghanistan and Iraq. He offers the excuse that he was dealing “with the difficult transition from military to civilian life.” He was discharged in 2013, two years before the divorce was commenced. There is no evidence that these alleged “difficulties” interfered with his daily activities or impaired his ability to seek counsel, or, for that matter, to simply contact the wife’s counsel after the service of the summons with notice. He also provides no evidence of any mental impairments or other psychical difficulties extant at the time he was served with either the summons or the judgment of divorce. There is evidence, advanced by the husband, that he knew he was being divorced and, according to his affidavit, he had frequent contact with his children before and after the entry of the judgment of divorce. It is difficult to conceive that a person, who knows a divorce is progressing and has access to his children, would have any excuse for putting “his head in the sand.”
The husband, in seeking a reasonable excuse for failing to appear in the action, argues that he is unable to pay child support because he cannot work. He alleges a “physical disability,” but he does not describe the exact nature of that disability. There is no allegation of any mental health difficulties. There are no reports regarding the extent of any disability and there *605 is no extrinsic evidence that he cannot work. He describes that he has a new child with his current girlfriend and that requires him to stay at home because they cannot afford daycare. This court is sympathetic to the husband’s plight, honors his service in the Army, and respects his choices regarding his family. But the issue before this court is not whether he is working: it is whether there was a reasonable excuse for his failure to respond to the summons. His difficulties are real, no doubt, but there is no evidence that they so impaired his judgment that he could not respond to his wife’s summons and complaint. Therefore, even if the husband’s application is filed within the year after service of the judgment, and even if this court concludes that he has a meritorious defense to the enforcement of the child support provisions—that is, noncompliance with publication requirements of the statute—his application to vacate the divorce decree runs short of the demanding “excusable default” language of CPLR 5015 (a).
In reaching this conclusion, this court acknowledges that the standards for vacatur set forth in CPLR 5015 (a) are somewhat relaxed when a party seeks to vacate a default in a matrimonial action. The courts of this state have adopted a liberal policy toward vacating defaults in matrimonial actions. (Bird, v Bird, 77 AD3d 1382, 1383 [4th Dept 2010]; Viner v Viner, 291 AD2d 398, 398 [2d Dept 2002] [In matrimonial actions, “the State’s interest in the marital res and allied issues . . . favor(s) dispositions on the merits”], citing Shaw v Shaw, 97 AD2d 403 [2d Dept 1983].) However, in the cases cited above, the equities favoring vacatur and a relaxing of the standards under CPLR 5015 (a) existed because the default was in failing to appear at a hearing or trial and the courts could not ignore the substance of marital assets denied to the defaulting party. In Viner v Viner, the defaulting wife in a 30-year marriage lost out on retirement accounts, a pension and valuable artwork because after discharging her counsel, she failed to appear at a single discovery conference. The Court appeared to not even require a “reasonable excuse” before vacating that default. (Viner at 399.) In Capurso v Capurso (134 AD3d 974 [2d Dept 2015]), the Court found a reasonable excuse when a respondent failed to appear because she was not notified of the trial date. In Ito v Ito (73 AD3d 983 [2d Dept 2010]), the Court relieved a default when a litigant missed the trial by a single day, and the Court held that her absence was not wilful and there was no evidence that she had abandoned her claims for child support and other *606 relief. The Court vacated the default. In Osman v Osman (83 AD3d 1022 [2d Dept 2011]), the wife was hospitalized with a panic attack when she failed to appear at the hearing to decide financial issues in her 27-year marriage. The Court found a “reasonable excuse” for the default. In Bird v Bird (77 AD3d 1382 [4th Dept 2010]), the wife, acting pro se, defaulted but later proved that she was misled by her husband when the default occurred. The Court found a “reasonable excuse” sufficient to vacate the default. (See also Marshall v Marshall, 124 AD3d 1314 [4th Dept 2015] [litigant disagreed with the proposed resolution of the parties’ retirement accounts and did not want to finalize the judgment on those terms, but that he was subsequently unable to contact his attorney, and a default judgment of divorce was entered without his knowledge was sufficient to vacate the judgment].)
In this instance, many of the compelling facts that justified a finding of a “reasonable excuse” for the default in the above-cited cases are not present. In all of the cited cases, the defaulting party appeared in the action, filed pleadings, but then failed to appear at court proceedings or trials. The cases all involved long-term marriages and, presumably significant marital assets, including retirement benefits. When litigants from long-term marriages appear in the divorce action, New York courts, conscious of the abject unfairness of leaving a party without a fair share of assets and benefits, have taken a liberal view of CPLR 5015 (a)’s requirements. Those facts are not present here. This marriage was short-term (less than seven years) and the couple lived together even less than that. There were no significant assets. The wife’s testimonial affidavit indicates that they owned no real property, had no retirement accounts, and no other marital property. The paucity of the couple’s assets is underscored by the husband’s claims in this proceeding. In asking to vacate the judgment, he only seeks to modify child support and seeks no other marital assets.
This court acknowledges that New York’s courts, in a post-equitable distribution environment, should enable spouses, who have responsibly appeared in an action by filing an answer or otherwise participating in the divorce process, to have all the benefits of any doubts—the “liberal” view espoused by the various Appellate Divisions—if they unintentionally default by failing to appear at important aspects of the hearing/trial process. Because the underlying facts are different in this case—the party seeking to vacate the default never appeared— *607 this court declines to apply this more liberal view. For all these reasons, this court, despite the apparent noncompliance with the Child Support Standards Act in the decree, cannot vacate the judgment of divorce.
Two other considerations factor into this conclusion. First, this court notes that the wife, in this instance, has raised two young children for a year without any financial help from the husband. It is inconceivable to this court that the husband, father of two children, who claims he was actively involved in their lives, would presume that he had no financial obligations to them during the last year. He cannot just “bury his head in the sand.” He knew he was divorced and the judgment of divorce, which he admits was served upon him more than a year ago, set forth his child support obligations. New York courts have strong powers given to them by the legislature to enforce child support obligations. (Schulman v Miller, 134 AD3d 616 [1st Dept 2015] [it is fundamental public policy in New York that parents of minor children are responsible for their children’s support].) This court, despite its understanding of and compassion for the husband’s situation, cannot ignore those commands.
Second, while declining to vacate the judgment, this decision does not preclude an application to modify the child support provisions of the divorce. The terms of the judgment of divorce declared that the husband has a right to seek modification of the child support award if his income has changed by more than 15%. (Domestic Relations Law § 236 [B] [9] [b] [2] [ii] [B].) Based on the facts alleged by the husband that he is unemployed, may be unemployable, has some disability, and other factors, he may be entitled to relief under those provisions. The current application before the court makes no reference to the 15% income adjustment, and the court declines to adjudicate the husband’s rights under the terms of the judgment or the statute. Whether a modification under these commands would be apropos is left to another day.
Because the decree cannot be vacated under this record, the court must enforce the decree according to its terms. There is no evidence that the husband has paid any child support under the decree. Therefore, the court grants the following relief:
A. The wife is granted a judgment for $10,252.12 for unpaid child support as of July 21, 2016, and any unpaid child support at the rate of $165.76 per week from July 21, 2016 through the date of this decision;
*608 B. The husband is hereby ordered to commence child support payments in the amount of $165.76 per week, commencing Friday, November 18, 2016;
C. This court finds that the husband is in civil contempt under Judiciary Law § 753 (A) (3) for failure to abide by the judgment of divorce regarding the payment of child support;* and,
D. The husband may purge this finding of contempt if he begins child support payments consistent with this order and makes arrangements for a schedule to repay the unpaid child support no later than June 30, 2017.
The wife requests to change custody from joint to sole custody in her favor. This request warrants an inquiry into whether the best of interests of the children require a change in custody. (Gizzi v Gizzi, 136 AD3d 1405 [4th Dept 2016]; Matter of Dingeldey v Dingeldey, 93 AD3d 1325 [4th Dept 2012].) The husband advances the same claim on opposing facts. Both parties have, in their affidavits, set forth a prima facie case for a sufficient change in circumstances for the court to schedule a hearing on the matter.
The mother’s request for attorney’s fees is granted as this motion involves an application under section 238 of the Domestic Relations Law. The wife’s attorney is directed to serve an affidavit of services within seven days of this decision and the court will allow the husband’s attorney to respond within five days.

 Civil contempt is established, regardless of the contemnor’s motive, when disobedience of the court’s order “defeats, impairs, impedes, or prejudices the rights or remedies of a party.” (El-Dehdan v El-Dehdan, 26 NY3d 19, 35 [2015].)